## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

Civil Action No.

ADELANA AKINDES; OSCAR WALTON; DANICA GAGLIANO-DELTGEN; and VICTOR
GARCIA *On behalf of themselves and other similarly situated individuals*,
      Plaintiffs,

v.

CITY OF KENOSHA; and KENOSHA COUNTY.
      Defendants.

---

## CLASS ACTION COMPLAINT AND DEMAND FOR A JURY TRIAL

---

For their Complaint, Plaintiffs state and allege as follows:

### INTRODUCTION

In Kenosha, there are two sets of laws - one that applies to those who protest police

brutality and racism, and another for those who support the police. Plaintiffs bring this action to

protect their right and the rights of others to protest police brutality free of retaliation and free

from fear that they will be arrested solely on the basis of the content of their message.

Over the past 9 days, the Kenosha City Police Department and the Kenosha County

Sheriff's Department have arrested over 150 peaceful protesters for violating the County imposed

curfew order[1], yet in spite of the presence of pro-police protesters and militias, NOT A SINGLE

---

[1] It is not clear that a curfew order has in fact been validly enacted. Counsel has made diligent efforts to
locate the enactment of an Emergency Curfew order through public document searches, online searches,
and in making phone calls to the Kenosha County Administration requesting this order. No such order can
be found online, though public records, and the County administration has been unable to provide an
order. The only reference to be found are three press releases by the Kenosha County Sheriff.

PRO-POLICE demonstrator has been arrested. The Kenosha Police and Kenosha Sheriffs use this ordinance to silence the voices of those who peacefully demonstrate against police brutality while allowing pro-police activists and militias to roam the streets without fear of arrest.

The Kenosha Police and Sheriffs cannot be trusted to enforce this curfew under a State of Emergency ordinance in a viewpoint neutral manner. These actions have not been isolated events - rather, they are part of a force-wide use of this ordinance to restrict the constitutional rights of demonstrators challenging racism and police brutality in our society. This pattern and practice of conduct by Kenosha police tramples on the Constitution.

Plaintiffs bring this action to ask the Court to restrain the City of Kenosha from further violations of the First Amendment and Equal Protection rights of peaceful demonstrators.

## THE PARTIES

1. Plaintiff Danica Gagliano-Deltgen is a Wisconsin resident who lives in the city of Wauwatosa County of Milwaukee,.

2. Plaintiff Oscar Walton is a Wisconsin resident who lives in the city and county of Milwaukee Wisconsin.

3. Plaintiff Adelana Akindes is a Wisconsin resident who lives in the city and county of Kenosha Wisconsin.

4. Plaintiff Victor Garcia is a Wisconsin resident who lives in the city and county of Kenosha Wisconsin.

5. Defendant City of Kenosha is a municipality incorporated in the State of Wisconsin.

## JURISDICTION AND VENUE

6. This is a civil rights action brought pursuant to 42 U.S.C. § 1983. Therefore, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331(a) and 1343, the First, Fifth and Eighth Amendments United States Constitution and over the parties pursuant to 28 U.S.C. § 1391(b) because this action arises from the commission of tortious acts within the State of Wisconsin, by residents of the State of Wisconsin.

7. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the District Court in and for the Eastern District of Wisconsin because the conduct complained of occurred within the City and County of Kenosha which is within the Eastern District of Wisconsin.

## BACKGROUND

8. On Sunday, August 23, 2020, Jacob Blake was attacked by an officer of the Kenosha Police Department ("KPD"). The events of Mr. Blake's attack were captured on video by a bystander and have renewed our national debate on systematic racism and police brutality directed at Black Americans.. Mr. Blake was transported by to a local hospital, where he has undergone multiple surgeries and per hospital personnel, remains in serious condition.

9. Almost immediately after the shooting, neighbors and Kenosha residents began to demonstrate in response to this police brutality. Demonstrators first gathered at the site of Mr. Blake's shooting and later went to the courthouse located in downtown Kenosha.

10. Every night since, peaceful demonstrators have assembled in downtown Kenosha, often in front of the Courthouse. Although some demonstrators have engaged in destructive

activity, these incidences have been remote when compared to the hundreds of otherwise peaceful protesters.

11. These demonstrators have gathered to exercise their First Amendment rights - to protest against the Kenosha Police for the police brutality inflicted just this week by that same very police department.

12. The Kenosha Police have responded that they do not need to hear these complaints, instead telling protesters that they should write a letter to the Governor of Wisconsin.

13. Kenosha County responded by enacting a State of Emergency curfew that has no exceptions for any purpose and in particular, makes no exception for the exercise of First Amendment rights.

14. The Kenosha curfew begins at 7 p.m. and lasts until 7 a.m. Starting the curfew at just after work appears more aimed at silencing speech than in pursuit of any substantial governmental interest.

15. By commencing the curfew at such an early time each day and providing no room for any free expression, the curfew has the effect of crowding out much of Plaintiffs' and Plaintiff Class's opportunity to exercise their rights.

16. These demonstrations to end police brutality and racism have also brought out vigilantes and pro-police counter-protesters.

17. Many of these pro-police protesters carry automatic weapons, typified by Kyle Rittenhouse, the 17-year old who murdered two peaceful demonstrators this week.

18. But these pro-police protesters are not simply protesters, they also appear to be coordinating with the Kenosha Police.

**See video of pro-police protester stating that the police told him and his group that the police would push the anti-police brutality protesters down to the pro-police militia "because you can deal with them": www.ascendcounsel.co/exhibit1**

19. The relationship between the police and these pro-police protesters and militia also shields those the police perceive as supportive from enforcement of the curfew.

20. In Exhibit 2, the police are shown thanking the militia members, stating "hey, thank you guys again" and "we appreciate you guys, we really do."

21. Although this video is taken after dark while a curfew is in place, the Kenosha police and Sheriffs can be heard providing support and supplies to the militia members while simultaneously enforcing the curfew against protesters expressing opposition to police brutality.

**See video of Kenosha Police speaking with Kyle Rittenhouse and his pro-police militia stating "Hey, thank you guys again" and "we appreciate you guys, we really do," while offering Mr. Rittenhouse and his posse water: www.ascendcounsel.co/exhibit2**

22. The video makes clear that there are two sets of laws - one for those whose message the police support, and one for those who message the police oppose.

23. Over the course of the past week, the Kenosha Police have arrested over one hundred and fifty (150) protesters. Each night, the police have used this ordinance to arrest more and more peaceful protesters.

24. Even though there were both pro-police and anti-police brutality protesters, ONLY anti-police protesters have been arrested under this ordinance.

25. More peaceful protesters will be arrested tonight, and every night so long as people show up to challenge the use of excessive force on the residents of Kenosha by the Kenosha Police Department and Kenosha Sheriffs.

26. The Kenosha Police and Sheriffs have shown an unwillingness to enforce the State of Emergency in a viewpoint neutral manner. Instead they use it as a tool to silence those peaceful protesters who dare to confront this police department's brutality.

27. The Kenosha Police and Sheriffs are supposed to serve and protect the residents of Kenosha.

28. Instead, they are only protecting their own.

## PLAINTIFF ALLEGATIONS

29. Plaintiff Danica Gagliano-Deltgen is a resident of Milwaukee, Wisconsin.

30. Ms. Gagliano-Deltgen attended a protest rally in Kenosha this week to express views opposing police violence and brutality.

31. Ms. Gagliano-Deltgen was arrested by the Kenosha Police for violating the curfew imposed by the State of Emergency ordinance while engaging in peaceful protest.

32. Ms. Gagliano-Deltgen intends to continue to protest police violence in Kenosha, but will either be arrested for such conduct in the future or will be chilled from participating in such protests for fear of arrest.

33. Plaintiff Adelana Akindes is a resident of Kenosha, Wisconsin.

34. Ms. Akindes attended a protest rally in Kenosha this week to express views opposing police violence and brutality.

35. Ms. Akindes was arrested by the Kenosha Police for violating the curfew imposed by the State of Emergency ordinance while engaging in peaceful protest.

36. As. Akindes intends to continue to protest police violence in Kenosha, but will either be arrested for such conduct in the future or will be chilled from participating in such protests for fear of arrest.

37. Plaintiff Oscar Walton is a resident of Milwaukee, Wisconsin.

38. Mr. Walton attended a protest rally in Kenosha this week to express views opposing police violence and brutality.

39. Mr. Walton was arrested by the Kenosha Police for violating the curfew imposed by the State of Emergency ordinance while engaging in peaceful protest.

40. Mr. Walton intends to continue to protest police violence in Kenosha, but will either be arrested for such conduct in the future or will be chilled from participating in such protests for fear of arrest.

41. Plaintiff Victor Garcia is a resident of Kenosha, Wisconsin.

42. Mr. Garcia attended a protest rally in Kenosha this week to express views opposing police violence and brutality.

43. Mr. Garcia was arrested by the Kenosha Police for violating the curfew imposed by the State of Emergency ordinance while engaging in peaceful protest.

44. Mr. Garcia intends to continue to protest police violence in Kenosha, but will either be arrested for such conduct in the future or will be chilled from participating in such protests for fear of arrest.

**MUNICIPAL ALLEGATIONS**

45. The City of Kenosha has policies and customs of violating the freedom of expression of protesters, of retaliating on the basis of the viewpoint expressed, and of enforcing certain ordinances on the basis of race and viewpoint.

46. The City of Kenosha has a custom or practice of infringing on peoples' right to assemble, to protest, to express their political and other beliefs, and on the basis of their viewpoint.

## **CLASS ALLEGATIONS**

47. Under Rules 23(a) and 23(b)(1) and (2)  of the **Federal Rules of Civil Procedure,** Plaintiffs bring this action for prospective relief on behalf of themselves and other similarly situated people who, as protesters, medics, journalists, and citizens of the State of Wisconsin, will in the future observe, record, and participate in protest activity and in public places within the city Kenosha in traditional or designated public fora (the "Plaintiff Class"). The Plaintiff Class is defined as:

> All protesters, who intend to engage in protest activities, to render aid to those who have been injured, and to record the actions of police officer on duty in public places within the city and county of Kenosha.

48. The Plaintiff Class is so numerous that joinder of all the members would be impracticable. Kenosha protest events over the past week often number in excess of five hundred participants.

49. As a result of the Kenosha's customs and policies of targeting journalist, medics, and protesters in enforcement of the State of Emergency or curfew, denying them freedom of movement to observe, record, and participate in public demonstrations, intimidation by threats of violence, and infringement on their right to assemble and speak, the Plaintiff

Class have been and will continue to be deprived of their constitutional rights under the First, Fourth, and Fourteenth Amendments.

50. Plaintiffs' claims for prospective relief are typical of the members of the Plaintiff Class because Protests are ongoing and Plaintiffs and the Plaintiff Class members have a reasonable fear that Defendants will continue to carry out their unconstitutional customs or policies of enforcing the State of Emergency ordinance and curfew with discriminatory intent and with an intent to infringe on the right to assemble and speak on the basis of opinion and viewpoint.

51. Plaintiffs will fairly and adequately protect the interests of the Plaintiff Class. Plaintiffs have no conflicts involving other class members or Defendants. Plaintiffs understand their role as a class representative and their duties to the class in this litigation. Plaintiffs are represented by competent and skilled counsel whose interests are fully aligned with the interests of the class.

52. Questions of law or fact are common to the class. These legal and factual questions include but are not limited to:

    a. Does the Kenosha Police Department enforce the State of Emergency ordinance in a manner so as to silence the voices of anti-police brutality protesters; and

    b. Does the Kenosha Police Department apply the State of Emergency ordinance only on the basis of viewpoint and not in a viewpoint neutral manner.

53. Maintaining individual actions would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Rule 23(b)(1)(A) of the Federal

Code of Civil Procedure (cite U.S. Code). Multiple courts issuing multiple injunctions governing the engagement and use-of-force standards for law enforcement would be entirely untenable. Doing so would only contribute to a state of uncertainty and confusion that allows the constitutional violations described in the complaint to continue.

54. This case involves "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Rule 23(b)(1)(B) of the Federal Code of Civil Procedure. A ruling with respect to a single Plaintiffs in this case would arguably be strong stare decisis—if not necessarily res judicata—with respect to other putative class members and members of the law enforcement community. There is no benefit to allowing the overwhelmingly common issues in this case to be litigated individually. The interests of both class members and defendants requires classwide treatment.

55. Finally, "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Rule 23(b)(2) of the Federal Code of Civil Procedure. There is no allegation that Plaintiffs have been targeted because of anything unique to them as individuals. Rather, they have been repeatedly targeted and assaulted because of their membership in a class of protesters. Plaintiffs' targeting exists only by virtue of a broader pattern and practice of unconstitutional conduct directed at journalists, medics, and protesters as a class. Logically, injunctive relief for the "class as a whole" is

the only mechanism available to afford relief in light of conduct directed specifically to the class.

## CAUSES OF ACTION

### COUNT I:

First Amendment - 42 U.S.C. 1983

56. Plaintiffs and the Plaintiff Class restate and reallege all previous paragraphs of this Complaint.

57. Plaintiffs and the Plaintiff Class engaged in constitutionally protected acts of observing, recording, and participating in events of public interest, including public demonstrations and in expressing their political views. Plaintiffs and the Plaintiff Class will continue to do so in the future.

58. Defendant retaliated against Plaintiffs and the Plaintiff Class for engaging in constitutionally protected activity and for the content and viewpoint of the expressions. Defendant's retaliation is part of a pattern or practice of unconstitutional conduct that is certain to continue absent any relief.

59. Plaintiffs and the Plaintiff Class reasonably fear the continued use of the State of Emergency to target only those opposing police brutality if they continue to engage in constitutionally protected activity.

60. These acts would chill a reasonable person from continuing to engage in a constitutionally protected activity. These acts did, in fact, chill Plaintiffs and the Plaintiff Class from continuing to observe and record some events of public interest and to participate in peaceful protests.

61. It was Defendant's custom and policy, as well as their failure to train and supervise their officers, and issue corrective instructions after violations were brought to light, that caused the First Amendment retaliation.

62. Defendant's failure to supervise and train their employees and agents with respect to the First Amendment rights of Plaintiff and the Plaintiff Class, amounts to deliberate indifference to the rights of Plaintiff and the Plaintiff Class.

63. The pattern of similar constitutional violations against Plaintiffs and the Plaintiff Class that occurred during the protests demonstrates the deliberate indifference of the Defendant to the rights of Plaintiffs and the Plaintiff Class.

64. Further, given the multiple constitutional violations documented above, the need for more supervision or training was so obvious, and the inadequacy of the training and supervision so likely to result in the violation of constitutional rights, that Defendant demonstrated their deliberate indifference to the need for such training and supervision.

65. Plaintiffs' First Amendment rights were violated when they were arrested for violating the State of Emergency ordinance on the basis of their expression.

66. Plaintiffs and the Plaintiff Class reasonably fear further retaliation in the future if they continue to observe, record, or participate in constitutionally protected activity.

**COUNT II:**

Equal Protection - Selective Enforcement - 42 U.S.C. 1983

67. Plaintiffs and the Plaintiff Class restate and reallege all previous paragraphs of this Complaint.

68. Plaintiffs and the Plaintiff Class have been arrested and are likely to be subject to future enforcement of the curfew on the basis of their viewpoint.

69. Compared to those who express a pro-police message, Plaintiffs and Plaintiff Class have been and will continue to be selectively treated.

70. The selective treatment and arrest of Plaintiffs and Plaintiff Class is motivated by an intention to discriminate on the basis of impermissible considerations and to punish or inhibit the exercise of First Amendment constitutional rights.

## COUNT III:

### First Amendment - Facial Challenge - 42 U.S.C. 1983

71. Plaintiffs and the Plaintiff Class restate and reallege all previous paragraphs of this Complaint.

72. The curfew instituted by Kenosha County provides no exceptions for legal observers or the press.

73. The curfew instituted by Kenosha County imposes a disproportionate burden on peaceful protesters engaged in protected First Amendment activity.

74. The curfew is not narrowly tailored to serve a significant governmental interest.

75. The curfew makes no allowance for alternative channels for free expression - completely eliminating any right to peaceably assemble during normal assembly and protest hours.

76. The curfew was enacted for the purpose of suppressing free expression and lawful assembly.

77. The curfew's restriction on First Amendment rights is greater than is essential to the furtherance of any governmental interest.

78. The curfew is not a reasonable time, place, or manner restriction on Plaintiffs' and Plaintiff Class's rights to exercise their First Amendment rights.

79. Beginning a curfew at 7 p.m. is both overbroad and is not narrowly tailored to a significant governmental interest.

WHEREFORE, Plaintiffs, individually and as representatives of the class defined here, pray for relief as follows:

1. A temporary restraining order barring the City of Kenosha and Kenosha County from enforcing the State of Emergency or any similar measure and from the discriminatory enforcement of any ordinance on the basis of any individual's viewpoint or opinion;

2. An order finding the Kenosha County curfew unconstitutional.

3. A preliminary injunction barring Defendants from engaging in unconstitutional conduct;

4. A determination that this action may proceed as a class action under Rules 23(a) and 23(b)(1) and (2) of the Federal Rules of Civil Procedure;

5. Designation of Plaintiffs as Class Representatives and designation of Plaintiffs' counsel as class counsel;

6. A declaration that Defendant's conduct violated the First, Fourth, and Fourth Amendments of the United States Constitution;

7. A permanent injunction barring Defendants from engaging in unconstitutional conduct;

8. Damages compensating Plaintiffs for their injuries, including but not limited to compensatory, pecuniary, and medical expense damages;

9. An award of prejudgment interest;

10. An award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

11. An award of such other and further relief as the Court deems equitable and just.

**<u>JURY DEMAND</u>**

Plaintiffs demand a trial by jury of all issues triable.

Respectfully submitted this 28th day of August, 2020.

<u>Kimberley Cy. Motley</u>
<u>2206 Bonnie Butler Way</u>
<u>Charlotte, North Carolina 28270</u>

<u>E. Milo Schwab</u>
<u>3000 Lawrence Street</u>
<u>Denver, CO 80205</u>

**ATTORNEYS FOR PLAINTIFFS**