**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

Civil Action No.

ADELANA AKINDES; OSCAR WALTON; DANICA GAGLIANO-DELTGEN; and VICTOR
GARCIA *On behalf of themselves and other similarly situated individuals*,
     Plaintiffs,

v.

CITY OF KENOSHA; KENOSHA COUNTY; DAVID BETH, IN HIS INDIVIDUAL CAPACITY;
DANIEL MISKINIS, IN HIS INDIVIDUAL CAPACITY; AND JOHN DOES 1-100, IN THEIR INDIVIDUAL
CAPACITIES.
     Defendants.

---

## FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR A JURY TRIAL

---

For their Complaint, Plaintiffs state and allege as follows:

### **INTRODUCTION**

In Kenosha, there are two sets of laws - one that applies to those who protest police

brutality and racism, and another for those who support the police. Plaintiffs bring this action to

protect their right and the rights of others to protest police brutality free of retaliation and free

from fear that they will be arrested solely on the basis of the content of their message.

Over 9 days in the end of August, 2020, the Kenosha Police Department arrested over

150 peaceful protesters for violating a curfew imposed without legal authority by Sheriff David

Beth. Only the County Executive is empowered to declare a state of emergency, yet Sheriff Beth

unilaterally and without legal authority, issued a broad curfew under a the guise of a state of emergency. Yet in spite of the presence of pro-police protesters and militias, NOT A SINGLE PRO-POLICE demonstrator was arrested. The Kenosha police officers and Kenosha sheriffs used this curfew to silence the voices of those who peacefully demonstrated against police brutality while allowing pro-police activists and militias to roam the streets without fear of arrest.

The Kenosha police officers and sheriffs did not enforce this curfew under a State of Emergency in a viewpoint neutral manner. Those actions were not isolated events - rather, they are part of a force-wide use of this ordinance to restrict the constitutional rights of demonstrators challenging racism and police brutality in our society. This pattern and practice of conduct by Kenosha police and its officers tramples on the Constitution.

Plaintiffs bring this action to ask the Court to enjoin the City of Kenosha from further violations of the First Amendment and Equal Protection rights of peaceful demonstrators.

## **THE PARTIES**

1. Plaintiff Danica Gagliano-Deltgen is a Wisconsin resident who lives in the city of Wauwatosa County of Milwaukee,.

2. Plaintiff Oscar Walton is a Wisconsin resident who lives in the city and county of Milwaukee Wisconsin.

3. Plaintiff Adelana Akindes is a Wisconsin resident who lives in the city and county of Kenosha Wisconsin.

4. Plaintiff Victor Garcia is a Wisconsin resident who lives in the city and county of Kenosha Wisconsin.

5. Defendant City of Kenosha is a municipality incorporated in the State of Wisconsin.

6.  Defendant Kenosha County is a local public entity under the laws of the State of Wisconsin.

7.  Defendant David Beth is the Sheriff for Kenosha County. Mr. Beth is a resident of the State of Wisconsin.

8.  Defendant Daniel Miskinis is the Chief of Police for the City of Kenosha. Mr. Miskinis is a resident of the State of Wisconsin.

9.  John Does 1-100 are individual police officers of the City of Kenosha who effected the arrests at issue in this case. Their identities are currently unknown to Plaintiffs, but are known to Defendant City of Kenosha. They are each public employees of Kenosha who were operating under the color of state law. When their identities are determined, this Complaint will be amended to name each individual officer to the extent that they violated the rights contemplated in this suit.

## JURISDICTION AND VENUE

10. This is a civil rights action brought pursuant to 42 U.S.C. § 1983. Therefore, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331(a) and 1343, the First, Fifth and Eighth Amendments United States Constitution and over the parties pursuant to 28 U.S.C. § 1391(b) because this action arises from the commission of tortious acts within the State of Wisconsin, by residents of the State of Wisconsin.

11. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the District Court in and for the Eastern District of Wisconsin because the conduct complained of occurred within the City and County of Kenosha which is within the Eastern District of Wisconsin.

## BACKGROUND

12. On Sunday, August 23, 2020, Jacob Blake was attacked by an officer of the Kenosha Police Department ("KPD"). The events of Mr. Blake's attack were captured on video by a bystander and have renewed our national debate on systematic racism and police brutality directed at Black Americans. Mr. Blake was transported to a local hospital, where he underwent multiple surgeries. He remains paralyed.

13. Almost immediately after the shooting, neighbors and Kenosha residents began to demonstrate in response to this police brutality. Demonstrators first gathered at the site of Mr. Blake's shooting and later went to the courthouse located in downtown Kenosha.

14. For the following nine evenings, peaceful demonstrators assembled in downtown Kenosha, often in front of the Courthouse. Although some demonstrators engaged in destructive activity, these incidences have been remote when compared to the hundreds of otherwise peaceful protesters.

15. These demonstrators gathered to exercise their First Amendment rights - to protest against the Kenosha Police and its officers for the police brutality inflicted just this week by that same very police department.

16. The Kenosha Police responded that they do not need to hear these complaints, instead telling protesters that they should write a letter to the Governor of Wisconsin.

17. On August 24, 2020, and continuing the the following week, Kenosha County Sheriff David Beth decided that he should have the power to demand citizens not protest.

18. Over the first three nights, and covering a total of seven nights, Sheriff Beth issued press releases declaring that a state of emergency had been declared.

19. He did this on his own.

20. Under Kenosha County law, only the County Executive can declare a state of emergency. **See Exhibit 1** *(Ordinance 5.03)*.

21. When a public records request was made for "any resolution or action taken by the County Board or the County Executive to put the curfew in place," Kenosha County responded that there are "no responsive documents." **Exhibit 2**.

22. In fact, Kenosha County Corporation Counsel gives up the game in this same email. It says that it was Sheriff David Beth who "declared a State of Emergency." **Exhibit 2**.

23. On August 23, 2020, Sheriff David Beth and the Kenosha Sheriff's office announced that "Kenosha County has again declared a state of Emergency Curfew for 10:15 PM tonight August 23th. The public needs to be off the streets for their safety. The curfew will be enforced until 7:00 AM." **See Exhibit 3.**

24. On August 24, 2020, Sheriff David Beth and the Kenosha Sheriff's office announced that "Kenosha County has again declared a state of Emergency Curfew for 8:00 PM tonight August 24th East of I-94. The public needs to be off the streets for their safety. The curfew will be enforced until 7:00 AM." **See Exhibit 4.**

25. That night, Chief of Police Daniel Miskinis directed his officers to arrest protesters for violating this curfew.

26. Kenosha County is approximately 7 miles north to south and I-94 lies approximately 7 miles west of Lake Michigan. All together, this curfew ostensibly made being outside a crime for eleven hours in a fifty square mile area.

27. On August 25, 2020, Sheriff David Beth and the Kenosha Sheriff's office announced that "Kenosha County has again declared a state of Emergency Curfew for 8:00 PM tonight August 25th East of I-94. The public needs to be off the streets for their safety. The curfew will be enforced until 7:00 AM." ***See Exhibit 5.***

28. That night, Chief of Police Daniel Miskinis directed his officers to arrest protesters for violating this curfew.

29. Kenosha County is approximately 7 miles north to south and I-94 lies approximately 7 miles west of Lake Michigan. All together, this curfew ostensibly made being outside a crime for eleven hours in a fifty square mile area.

30. On August 26, 2020, Sheriff David Beth and the Kenosha Sheriff's office announced that "Kenosha County has again declared a state of Emergency Curfew for 7:00 PM tonight August 26th East of I-94 through Sunday August 30th. The public needs to be off the streets for their safety. The curfew will be enforced until 7:00 AM." ***See Exhibit 6.***

31. Kenosha County is approximately 7 miles north to south and I-94 lies approximately 7 miles west of Lake Michigan. All together, this curfew ostensibly made being outside a crime for twelve hours in a fifty square mile area for five nights.

32. That night, Chief of Police Daniel Miskinis directed his officers to arrest protesters for violating this curfew.

33. These State of Emergency curfews had no exceptions for any purpose and in particular, made no exception for the exercise of First Amendment rights.

34. In covering 50 square miles for half of the day, these curfews were in no way narrowly tailored to a substantial government interest.

35. Most importantly, these curfews provided no alternative channels for the exercise of Plaintiffs' first amendment rights when *Ward v. Rock Against Racism*, 491 U.S. 781 (1989) requires a government to provide ample alternative channels.

36. Starting these curfews just citizens end their workday appears more aimed at silencing speech than in pursuit of any substantial governmental interest.

37. By commencing the curfew at such an early time each day and providing no room for any free expression, the curfew has the effect of crowding out much of Plaintiffs' and Plaintiff Class's opportunity to exercise their rights.

38. These demonstrations to end police brutality and racism also brought out vigilantes and pro-police counter-protesters.

39. Many of these pro-police protesters carried automatic weapons, typified by Kyle Rittenhouse, the 17-year old who murdered two peaceful demonstrators in August.

40. But these pro-police protesters are not simply protesters, they also appear to be coordinating with the Kenosha police officers.

**See video of pro-police protester stating that the police told him and his group that the police officers would push the anti-police brutality protesters down to the pro-police militia "because you can deal with them": www.ascendcounsel.co/exhibit7**

41. The relationship between the police, police officers, and these pro-police protesters and militia also shielded those the police and police officers perceive as supportive from enforcement of the curfew.

42. In Exhibit 8, Kenosha police officers are shown thanking the militia members, stating "hey, thank you guys again" and "we appreciate you guys, we really do."

43. Although this video is taken after dark while a curfew is in place, the Kenosha police officers and Sheriffs can be heard providing support and supplies to the militia members while simultaneously enforcing the curfew against protesters expressing opposition to police brutality.

**See video of Kenosha Police officers speaking with Kyle Rittenhouse and his pro-police militia stating "Hey, thank you guys again" and "we appreciate you guys, we really do," while offering Mr. Rittenhouse and his posse water: www.ascendcounsel.co/exhibit8**

44. The video makes clear that there are two sets of laws - one for those whose message the police officers support, and one for those who message the police officers oppose.

45. Over the course of that week, Kenosha police officers arrested over one hundred and fifty (150) protesters. Each night, the police officers used this ordinance to arrest more and more peaceful protesters.

46. Even though there were both pro-police and anti-police brutality protesters, ONLY anti-police protesters were arrested by Kenosha police officers under this curfew.

47. As journalist Kevin Glowicki states, he spoke with between fifteen and twenty people arrested under the curfew. All of them were protesting police brutality. Although he spent the night in jail, he did not find one person arrested under the curfew who had expressed the pro-police viewpoints captured in the videos attached to this complaint. ***See Exhibit 9***.

48. As Mr. Glowicki recounts, while he was stopped another night by Kenosha police officers, he observed pro-police demonstrators walking by without any attention from Kenosha police officers.

49. As Emily Jane Bell, a licensed attorney in the State of Wisconsin recounts, she has six clients who were arrested either based on their anti-police brutality opinions or because the Kenosha police officers involved in their arrests believed them to be expressing anti-police brutality opinions. ***See Exhibit 10***.

50. In speaking with her clients, each indicated that not a single pro-police protester was arrested.

51. The Kenosha police officers and sheriffs showed an unwillingness to enforce the State of Emergency in a viewpoint neutral manner. Instead they used it as a tool to silence those peaceful protesters who dare to confront this police department's brutality.

52. The Kenosha police officers and sheriffs are supposed to serve and protect the residents of Kenosha.

53. Instead, they only protect their own.

## PLAINTIFF ALLEGATIONS

54. Plaintiff Danica Gagliano-Deltgen is a resident of Milwaukee, Wisconsin.

55. Ms. Gagliano-Deltgen attended a protest rally in Kenosha this week to express views opposing police violence and brutality.

56. Ms. Gagliano-Deltgen was arrested by Kenosha police officers for violating the curfew imposed by the State of Emergency ordinance while engaging in peaceful protest.

57. Ms. Gagliano-Deltgen intends to continue to protest police violence in Kenosha, but will either be arrested for such conduct in the future or will be chilled from participating in such protests for fear of arrest.

58. Plaintiff Adelana Akindes is a resident of Kenosha, Wisconsin.

59. Ms. Akindes attended a protest rally in Kenosha this week to express views opposing police violence and brutality.

60. Ms. Akindes was arrested by the Kenosha police officers for violating the curfew imposed by the State of Emergency ordinance while engaging in peaceful protest.

61. Ms. Akindes intends to continue to protest police violence in Kenosha, but will either be arrested for such conduct in the future or will be chilled from participating in such protests for fear of arrest.

62. Plaintiff Oscar Walton is a resident of Milwaukee, Wisconsin.

63. Mr. Walton attended a protest rally in Kenosha this week to express views opposing police violence and brutality.

64. Mr. Walton was arrested by the Kenosha police officers for violating the curfew imposed by the State of Emergency ordinance while engaging in peaceful protest.

65. Mr. Walton intends to continue to protest police violence in Kenosha, but will either be arrested for such conduct in the future or will be chilled from participating in such protests for fear of arrest.

66. Plaintiff Victor Garcia is a resident of Kenosha, Wisconsin.

67. Mr. Garcia attended a protest rally in Kenosha this week to express views opposing police violence and brutality.

68. Mr. Garcia was arrested by the Kenosha police officers for violating the curfew imposed by the State of Emergency ordinance while engaging in peaceful protest.

69. Mr. Garcia intends to continue to protest police violence in Kenosha, but will either be arrested for such conduct in the future or will be chilled from participating in such protests for fear of arrest.

## MUNICIPAL ALLEGATIONS

70. The City of Kenosha has policies and customs of violating the freedom of expression of protesters, of retaliating on the basis of the viewpoint expressed, and of enforcing certain ordinances on the basis of race and viewpoint.

71. There were approximately 150 arrests, targeting only one viewpoint. Such action is necessarily the result of a custom or direction from a final policy maker to target only those protesters who oppose police brutality.

72. Chief of Police Miskinis is a final decision maker for the Kenosha City Police. His instruction to arrest protesters under a State of Emergency he knew to be unlawful represents an official policy of the City of Kenosha.

73. The City of Kenosha has a custom or practice of infringing on peoples' right to assemble, to protest, to express their political and other beliefs, and on the basis of their viewpoint.

74. Sheriff David Beth is a final decision maker for Kenosha County. His decision to unilaterally issue a State of Emergency without legal authority is an official policy of Kenosha County.

## CLASS ALLEGATIONS

75. Under Rules 23(a) and 23(b)(1) and (2) of the **Federal Rules of Civil Procedure,** Plaintiffs bring this action for prospective relief on behalf of themselves and other similarly situated people who, as protesters, medics, journalists, and citizens of the State

of Wisconsin, will in the future observe, record, and participate in protest activity and in public places within the city Kenosha in traditional or designated public fora (the "Plaintiff Class"). The Plaintiff Class is defined as:

   a) All protesters, who intended to engage in protest activities during the period between August 23, 2020 and September 2, 2020, whose free speech rights were chilled by an unlawful curfew order, the discriminatory arrests of those possessing one viewpoint, and by other conduct of defendants which resulted in the chilling of such rights; and

   b) Those who were subject to arrest for under an unlawful seizure under legal unlawful curfew and who were subjected to discrimination and violations of their first amendment rights as a result of the discriminatory enforcement of the curfew.

76. The Plaintiff Class is so numerous that joinder of all the members would be impracticable. Kenosha protest events over the past week often number in excess of five hundred participants.

77. As a result of the Kenosha's customs and policies of targeting journalist, medics, and protesters in enforcement of the State of Emergency or curfew, denying them freedom of movement to observe, record, and participate in public demonstrations, intimidation by threats of violence, and infringement on their right to assemble and speak, the Plaintiff Class have been and will continue to be deprived of their constitutional rights under the First, Fourth, and Fourteenth Amendments.

78. Plaintiffs' claims for prospective relief are typical of the members of the Plaintiff Class because Protests are ongoing and Plaintiffs and the Plaintiff Class members have a reasonable fear that Defendants will continue to carry out their unconstitutional customs or policies of enforcing the State of Emergency ordinance and curfew with discriminatory intent and with an intent to infringe on the right to assemble and speak on the basis of opinion and viewpoint.

79. Plaintiffs will fairly and adequately protect the interests of the Plaintiff Class. Plaintiffs have no conflicts involving other class members or Defendants. Plaintiffs understand their role as a class representative and their duties to the class in this litigation. Plaintiffs are represented by competent and skilled counsel whose interests are fully aligned with the interests of the class.

80. Questions of law or fact are common to the class. These legal and factual questions include but are not limited to:

    a. Does the Kenosha Police Department enforce the State of Emergency ordinance in a manner so as to silence the voices of anti-police brutality protesters;

    b. Does the Kenosha Police Department apply the State of Emergency ordinance only on the basis of viewpoint and not in a viewpoint neutral manner;

    c. Was the State of Emergency curfew an unlawful order which resulted in unlawful seizures; and

    d. Did the State of Emergency curfew provide the necessary first amendment protections including ample avenues for the exercise of free speech.

81. Maintaining individual actions would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Rule 23(b)(1)(A) of the Federal Code of Civil Procedure (cite U.S. Code) . Multiple courts issuing multiple injunctions governing the engagement and use-of-force standards for law enforcement would be entirely untenable. Doing so would only contribute to a state of uncertainty and confusion that allows the constitutional violations described in the complaint to continue.

82. This case involves "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Rule 23(b)(1)(B) of the Federal Code of Civil Procedure. A ruling with respect to a single Plaintiffs in this case would arguably be strong stare decisis—if not necessarily res judicata—with respect to other putative class members and members of the law enforcement community. There is no benefit to allowing the overwhelmingly common issues in this case to be litigated individually. The interests of both class members and defendants requires classwide treatment.

83. Finally, "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Rule 23(b)(2) of the Federal Code of Civil Procedure. There is no allegation that Plaintiffs have been targeted because of anything unique to them as individuals. Rather, they have been repeatedly targeted and assaulted because of their membership in a class of protesters. Plaintiffs' targeting exists only by

virtue of a broader pattern and practice of unconstitutional conduct directed at journalists, medics, and protesters as a class. Logically, injunctive relief for the "class as a whole" is the only mechanism available to afford relief in light of conduct directed specifically to the class.

<u>**CAUSES OF ACTION**</u>
**COUNT I:**
**Due Process - 42 U.S.C. 1983**
*(David Beth and Kenosha County)*

84. Plaintiffs and the Plaintiff Class restate and reallege all previous paragraphs of this Complaint.

85. We are a nation of laws.

86. All citizens, including those honored with public office, are subject to those laws, and indeed to the rule of law.

87. In August of 2020, David Beth decided that he was the law.

88. Without any legal right, David Beth declared a state of emergency and curfew, making the simple act of being outside an arrestable offense.

89. No law gave him that right. David Beth is not the legislature - he does not get to decide what conduct should be a crime.

90. Indeed, without this legal authority, David Beth exercised governmental power without a reasonable justification.

91. As a result of David Beths unlawful and extraconstititional conduct, Plaintiffs and the Plaintiff Class were subject to police intimidation, harassment, and for many, arrest and criminal trial.

92. Plaintiffs and the Plaintiff Class were denied their fundamental rights and liberty interests.

93. Plaintiffs and the Plaintiff Class have suffered and continued to suffer injury.

**COUNT II:**
**Procedural Due Process - 42 U.S.C. 1983**
*(David Beth and Kenosha County)*

94. Plaintiffs and the Plaintiff Class restate and reallege all previous paragraphs of this Complaint.

95. David Beth deprived Plaintiffs and the Plaintiff Class of their protected interests of being free from unlawful arrest and freedom to express their opinions on matters of public importance.

96. David Beth ignored the procedural requirements as required under law before unilaterally and without legal justification or right, declared a state of emergency and curfew punishable by conviction.

97. Kenosha County ordinances provide for a process for the declaration of a state of emergency. David Beth ignored that process.

98. As a result of David Beth's conduct, Plaintiffs and the Plaintiff Class have suffered injury.

**COUNT III:**
**Due Process - Shocks the Conscious - 42 U.S.C. 1983**
*(David Beth and Kenosha County)*

99. Plaintiffs and the Plaintiff Class restate and reallege all previous paragraphs of this Complaint.

100.    David Beth created a danger to Plaintiffs by declaring a state of emergency.

101.   Plaintiffs were a definable group as protesters.

102.   Defendant was aware that by declaring a state of emergency and curfew without legal

authority, he was subjecting Plaintiffs and the Plaintiff Class to prosecution for conduct

which was not a crime.

103.   It was obvious to Sheriff Beth that these protesters would be subject to arrest under

his extra-legal order.

104.   Sheriff Beth disregarded this risk.

105.   Issuing an order that makes a crime out of conduct without the legal authority to do so

is shocking to our legal system, and shocks the conscious. Mr. Beth purposefully

disregarded legal norms, the law, and any semblance of the rule of law in ordering lawful

conduct criminal without right.

**COUNT IV:**
**Unlawful Seizure - 42 U.S.C. 1983**
*(Defendant City of Kenosha and Defendant Daniel Miskinis, Individually)*

106.   Plaintiffs and the Plaintiff Class restate and reallege all previous paragraphs of this

Complaint.

107.   Plaintiffs and the Plaintiff Class were arrested for failure to comply with an

Emergency Management Order of State or Local Government.

108.   No such Emergency Management Order was in force at the time of Plaintiffs' and

Plaintiff Class's arrests.

109.   Daniel Miskinis, as Chief of Police, was aware that no authority existed for the

enforcement of a fake criminal law - that such a law was in effect a limited use of martial

law.

110.    As Chief of Police for Kenosha, Mr. Miskinis is a Final Policymaker and therefore his

actions are the actions of the City of Kenosha.

111.    After their arrests without any legal basis, Plaintiffs and Plaintiff Class were

subjected to many hours of detention without cause.

112.    To this date, even though the City of Kenosha is aware that there is no legal basis for

these arrests, it continues to instruct its officers to provide testimony in criminal matters

for conduct it knows is not a criminal offense.

113.    Plaintiffs and Plaintiff Class have suffered and continue to suffer the consequences of

the Mr. Miskinis's and the City of Kenosha's extra-legal arrests and prosecution.

**COUNT V:**
**Equal Protection - Selective Enforcement - 42 U.S.C. 1983**
*(City of Kenosha and John Does 1-100, individually)*

114.    Plaintiffs and the Plaintiff Class restate and reallege all previous paragraphs of this

Complaint.

115.    Plaintiffs and the Plaintiff Class were arrested on the basis of their viewpoint.

116.    Compared to those who expressed a pro-police message, Plaintiffs and Plaintiff Class

were selectively treated.

117.    Those who expressed a pro-police message were not arrested.

118.    The selective treatment and arrest of Plaintiffs and Plaintiff Class was motivated by

an intention to discriminate on the basis of impermissible considerations and to punish or

inhibit the exercise of First Amendment constitutional rights.

119.    Plaintiffs and the Plaintiff Class have suffered injury as a result of Defendants'

conduct.

**COUNT VI:**

## First Amendment Retaliation - 42 U.S.C. 1983
### *(City of Kenosha and John Does 1-100, individually)*

120.   Plaintiffs and the Plaintiff Class restate and reallege all previous paragraphs of this Complaint.

121.   Plaintiffs and the Plaintiff Class engaged in constitutionally protected acts of observing, recording, and participating in events of public interest, including public demonstrations and in expressing their political views. Plaintiffs and the Plaintiff Class will continue to do so in the future.

122.   Defendant retaliated against Plaintiffs and the Plaintiff Class for engaging in constitutionally protected activity and for the content and viewpoint of the expressions. Defendant's retaliation is part of a pattern or practice of unconstitutional conduct that is certain to continue absent any relief.

123.   Plaintiffs and the Plaintiff Class reasonably fear the continued use of the State of Emergency to target only those opposing police brutality if they continue to engage in constitutionally protected activity.

124.   These acts would chill a reasonable person from continuing to engage in a constitutionally protected activity. These acts did, in fact, chill Plaintiffs and the Plaintiff Class from continuing to observe and record some events of public interest and to participate in peaceful protests.

125.   It was Defendant's custom and policy, as well as their failure to train and supervise their officers, and issue corrective instructions after violations were brought to light, that caused the First Amendment retaliation.

126. Defendant's failure to supervise and train their employees and agents with respect to the First Amendment rights of Plaintiff and the Plaintiff Class, amounts to deliberate indifference to the rights of Plaintiff and the Plaintiff Class.

127. The pattern of similar constitutional violations against Plaintiffs and the Plaintiff Class that occurred during the protests demonstrates the deliberate indifference of the Defendant to the rights of Plaintiffs and the Plaintiff Class.

128. Further, given the multiple constitutional violations documented above, the need for more supervision or training was so obvious, and the inadequacy of the training and supervision so likely to result in the violation of constitutional rights, that Defendant demonstrated their deliberate indifference to the need for such training and supervision.

129. Plaintiffs' First Amendment rights were violated when they were arrested for violating the State of Emergency ordinance on the basis of their expression.

130. Plaintiffs and the Plaintiff Class reasonably fear further retaliation in the future if they continue to observe, record, or participate in constitutionally protected activity.

131. Plaintiffs and Plaintiff Class have suffered injury as a result of Defendants' retaliation for the expression of Plaintiffs' opinions.

## COUNT VII:
### First Amendment - 42 U.S.C. 1983
#### *(Kenosha County)*

132. Plaintiffs and the Plaintiff Class restate and reallege all previous paragraphs of this Complaint.

133. The curfew instituted by Kenosha County provided no exceptions for legal observers or the press.

134. The curfew instituted by Kenosha County imposed a disproportionate burden on peaceful protesters engaged in protected First Amendment activity.

135. The curfew was not narrowly tailored to serve a significant governmental interest.

136. The curfew made no allowance for alternative channels for free expression - completely eliminating any right to peaceably assemble during normal assembly and protest hours.

137. The curfew was enacted for the purpose of suppressing free expression and lawful assembly.

138. The curfew's restriction on First Amendment rights were greater than is essential to the furtherance of any governmental interest.

139. The curfew was not a reasonable time, place, or manner restriction on Plaintiffs' and Plaintiff Class's rights to exercise their First Amendment rights.

140. Beginning a curfew at 7 p.m. is both overbroad and is not narrowly tailored to a significant governmental interest.

141. As a result of Kenosha County's curfew order, Plaintiffs and Plaintiff Class were subject to arrest and were denied their first amendment right to protest while other potential protesters were chilled from their right to express their opinions for fear of arrest.

142. Plaintiffs and the Plaintiff Class have suffered injury as a result of these violations of their first amendment rights.

WHEREFORE, Plaintiffs, individually and as representatives of the class defined here, pray for relief as follows:

1. An order finding the Kenosha County curfew unconstitutional.

2. A preliminary injunction barring Defendants from engaging in unconstitutional conduct;

3. A determination that this action may proceed as a class action under Rules 23(a) and 23(b)(1) and (2) of the Federal Rules of Civil Procedure;

4. Designation of Plaintiffs as Class Representatives and designation of Plaintiffs' counsel as class counsel;

5. A declaration that Defendant's conduct violated the First, Fourth, and Fourteenth Amendments of the United States Constitution;

6. A permanent injunction barring Defendants from engaging in unconstitutional conduct;

7. Damages compensating Plaintiffs for their injuries, including but not limited to compensatory, pecuniary, and medical expense damages;

8. An award of prejudgment interest;

9. An award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

10. An award of such other and further relief as the Court deems equitable and just.

## **JURY DEMAND**

Plaintiffs demand a trial by jury of all issues triable.

Respectfully submitted this 28th day of October, 2020.

Kimberley Cy. Motley
2206 Bonnie Butler Way
Charlotte, North Carolina 28270

E. Milo Schwab
3000 Lawrence Street
Denver, CO 80205

**ATTORNEYS FOR PLAINTIFFS**