IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

ADELANA AKINDES, OSCAR WALTON,
DANICA GAGLIANO-DELTGEN; and VICTOR
GARCIA On behalf of themselves and other
similarly situated individuals,

        Plaintiffs,

        Case No. 20-CV-01353

        v.

CITY OF KENOSHA, KENOSHA COUNTY,
SHERIFF DAVID BETH (in his individual capacity),
DANIEL MISKINIS (in his individual capacity) and
JOHN DOES 1-100,

        Defendants.

---

**KENOSHA COUNTY and SHERIFF DAVID BETH'S BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION
COMPLAINT PURSUANT TO FED. R. CIV. PROC. 12(B)(6)**

---

        Defendants, Kenosha County and Sheriff David Beth, by their attorneys, Crivello

Carlson, S.C., submit the following Brief in Support of their Motion to Dismiss Plaintiffs' First

Amended Class Action Complaint pursuant to Fed. R. Civ. Proc. 12(b)(6) for failure to state a

claim upon which relief may be granted.[1]

## BACKGROUND

        Plaintiffs Adelana Akindes, Oscar Walton, Danica Gagliano-Deltgen, and Victor

Garcia—and on behalf of others allegedly similarly situated—filed this action against the City of

---

[1] Defendants City of Kenosha and Daniel Miskinis are also filing a separate Motion to Dismiss Plaintiffs' claims. Defendants Kenosha County and Sheriff Beth adopt those arguments stated in the City of Kenosha's Brief in Support of their Motion to Dismiss to the extent they apply to the allegations against Kenosha County and/or Sheriff David Beth. This includes the City's arguments regarding municipal liability, jurisdictional concerns (Argument III) and Injunctive Relief (Argument VI).

Kenosha and Kenosha County on September 1, 2020, alleging that they were improperly targeted and arrested for violating a State of Emergency curfew, enacted in Kenosha County and the City of Kenosha in an attempt to disrupt violence associated with protests following the shooting of Jacob Blake on August 23, 2020. (*See generally* Dkt. 1, Compl. ¶¶12-13). While Plaintiffs admit that there was "destructive activity" that accompanied these protests, they failed to acknowledge the full extent of the damage that was done in the nights prior to the enactment of the curfew. (Dkt. 16, Am. Compl. ¶ 14). As stated in the City of Kenosha's Brief in Support of its Motion to Dismiss, the rioting and mayhem were extensive enough to make national news and attract the attention of the President of the United States, the Governor of Wisconsin, and the National Guard.

The issuance of the curfew was no secret, with press releases publicized by Kenosha County, (*id.*, ¶ 18) as well as various media outlets.[2] The curfew was in place from August 23, 2020, to September 2, 2020. On August 23, 2020, the Kenosha County Sheriff's Department issued a media release announcing a curfew. (*Id.*, ¶ 23, Ex. 3.)

On August 24 and 25, Kenosha County Sheriff's Department issued similar media releases announcing a curfew beginning at 8:00 p.m. for the area "East of I-94." (*Id.* Exs. 4, 5.) Also on August 25, 2020, Kenosha County Sheriff David Beth issued a press release regarding the curfew and not to engage in destructive behavior:

> As we enter what will likely be another very challenging night in Kenosha County, I want the public to know that the Kenosha County Sheriff's Department and our partners in law enforcement are doing our utmost to protect our community during this unprecedented time of unrest.
>
> We are working alongside members of the Kenosha Policy Department and law enforcement departments from across Wisconsin, as well as state and federal

---

[2] Kenosha County and Sheriff Beth incorporate by reference footnotes 1 through 5 as stated in the City of Kenosha's Brief in Support of Motion to Dismiss ("City Brief").

authorities and the Wisconsin National Guard, in a concerted attempt to minimize the spread of the destructive behavior that has plagued us since Sunday night.

People are frustrated, I get it. And they're scared. I certainly get that, too. Rumors abound on social media and elsewhere, with widely varying levels of truth to them. We know that much of the damage is being inflicted by people coming in from outside our community, with the intent to rob and destroy, not to engage in their First Amendment right to demonstrate.

The best thing our residents can do to stay safe is to stay home tonight and abide by the curfew that will be in effect from 8 p.m. until 7 a.m. tomorrow. If you want to protest peacefully, by all means go out and do it. It's your right. But don't be a part of this destructive force that's burning our community. That's not a productive path to justice.

And know that we are working actively to continue marshaling the resources we need to bring this disruption under control. Just today, our county executive, Jim Kreuser, and our mayor, John Antaramian, worked with the governor to bring more National Guard troops to Kenosha tonight and in the coming days. And we are working to bring in help from federal authorities as quickly as possible.

We are not sitting idly, watching the destruction of our community. We're making every effort to make it stop, and I hope you will too.[3]

On August 26, the curfew was issued from 7:00 p.m. to 7:00 a.m. for the area "east of I-94" and through Sunday, August 30th. (*Id*. Ex. 6.) On August 30, the curfew was issued for August 31 and September 1 from 7:00 p.m. to 7:00 a.m. for the same area.[4] On September 1, Kenosha County Sheriff's Department issued a media release stating that the curfew would remain in effect from 7:00 p.m. to 7:00 a.m.[5] through September 2 at 7:00 a.m. On September 2, the curfew ended.[6]

According to the facts alleged in the First Amended Complaint,[7] Plaintiffs allege that they were improperly targeted and arrested by the Kenosha Police for violating the curfew

---

[3] *See* City Brief at 3 n.2.
[4] *See* City Brief at 3 n.3.
[5] *See* City Brief at 3 n.4.
[6] *See* City Brief at 3 n.5.
[7] Kenosha County disputes many of the facts as alleged in Plaintiffs' Complaint, but acknowledges that the allegations in the complaint must be accepted as true for purposes of this motion.

imposed by the "State of Emergency ordinance while engaging in peaceful protest." (Dkt. 16, Am. Compl. ¶¶ 56, 60, 64 and 68). According to Plaintiffs, they were singled out for arrest due to their views of being "anti-police brutality protestors," while other "pro-police" individuals were not similarly arrested. (*See generally* Dkt. 16, Am. Complaint, e.g. ¶ 49). In their Complaint, Plaintiffs initially alleged three causes of action which include the following: (1) First Amendment – 42 U.S.C. 1983 alleging their arrests by the Kenosha Police were made in retaliation for their protected speech of engaging in protests against police brutality; (Dkt. 1, Complaint, ¶¶ 56-66); (2) Equal Protection-Selective Enforcement – 42 U.S.C. 1983 alleging their arrests by the Kenosha Police were made due to impermissible considerations and to punish or inhibit the exercise of First Amendment constitutional rights; (Dkt. 1, Complaint, ¶¶ 67-70); and (3) First Amendment-Facial Challenge – 42 U.S.C. 1983 arguing that the curfew instituted was enacted by Kenosha County for purpose of suppressing free expression and unlawful assembly. (*See* Dkt. 1, Complaint, ¶¶ 71-79).

Subsequently, both Kenosha County and the City of Kenosha filed motions to dismiss Plaintiffs' Complaint. On October 28, 2020, plaintiffs filed a First Amended Class Action Complaint against the City of Kenosha, Kenosha County, Sheriff David Beth (in his individual capacity), Daniel Miskinis (in his individual capacity) and John Does 1-100. (See Dkt. 16).

Plaintiffs' First Amended Complaint alleges seven causes of action which include the following: (1) Due Process – 42 U.S.C. 1983; (2) Procedural Due Process – 42 U.S.C. 1983; (3) Due Process – Shocks the [Conscience][8] – 42 U.S.C. 1983; (4) Unlawful Seizure – 42 U.S.C. 1983; (5) Equal Protection – Selective Enforcement – 42 U.S.C. 1983; (6) First Amendment Retaliation – 42 U.S.C. 1983; (7) First Amendment – 42 U.S.C. 1983. Specifically, only Counts I, II, III, and VII make claims against either Kenosha County or Sheriff David Beth.

_____

[8] Presumably Plaintiffs meant "Shocks the Conscience" rather than "Shocks the Conscious".

4

As more fully set forth herein, Plaintiffs' Complaint fails to state a claim upon which relief can be granted as to Sheriff David Beth and Kenosha County as: (1) Plaintiffs fail to clearly set forth sufficient allegations to support a *Monell* claim against Kenosha County; (2) Plaintiffs' vague due process claims as alleged against Kenosha County and Sheriff David Beth fail to state a claim; and (3) Plaintiffs' First Amendment facial challenge fails.

## ARGUMENT

### I.      STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a Complaint must contain allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). "In reviewing the sufficiency of a complaint under the plausibility standard announced in *Twombly* and *Iqbal*, [the court should] accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 129 S.Ct. at 1951). In other words, the Supreme Court explained that any legal conclusions must be supported by factual allegations in the complaint.

Therefore, to survive a motion to dismiss, a plaintiff must plead in the Complaint "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1951 (citing *Twombly*, 550 U.S. at 556). A court should essentially parse out the conclusory allegations and "determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" *McCauley*, 671 F.3d at 616. "The degree of specificity required [of the factual allegations] is not easily quantified, but 'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together.'"

5

*Id.* (quoting *Swanson v. Citibank*, N.A., 614 F.3d 400, 404 (7th Cir. 2010)). "A more complex case . . . will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected." *Swanson*, 614 F.3d at 405. If allegations of a complaint give rise to an "'obvious alternative [legitimate] explanation'" for the conduct which is allegedly wrongful, the claim fails to meet the plausibility requirement and must be dismissed. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Here, Plaintiffs' First Amended Complaint fails to advance a claim upon which relief can be granted as against either Sheriff David Beth individually or Kenosha County. Accordingly, this Court should grant Sheriff David Beth and Kenosha County's Motion to Dismiss and dismiss them from this suit with prejudice.

## II. PLAINTIFFS' ALLEGATIONS AGAINST SHERIFF DAVID BETH IN HIS INDIVIDUAL CAPACITY SHOULD BE DISMISSED AS THEY ARE INSUFFIENT, CONFUSING, AND REDUNDANT.

In order to bring a claim against a municipal employee in his or her individual capacity, plaintiffs must allege that he was personally involved in a constitutional deprivation. *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000). While plaintiffs state generally that Sheriff Beth declared a state of emergency and curfew, the crux of their alleged constitutional deprivation was not the curfew itself but rather the alleged selective enforcement of the curfew and arrests by the City of Kenosha and Chief Miskinis. (Dkt. 16, Am. Complaint, ¶¶ 51, 73, 77, 106-131). There is no allegation that Sheriff Beth participated in the alleged improper arrests or selective enforcement of the curfew. Plaintiffs may therefore not proceed against Sheriff David Beth in his individual capacity for failure to plausibly allege personal involvement in the cause of their constitutional deprivation. *O'Shell v. Cline*, 571 F. App'x 487, 491 (7th Cir. 2014).

Rather, plaintiffs' allegations against Sheriff Beth seem to be that he is a final decision maker for Kenosha County who unilaterally issued a state of emergency. (Dkt. 16, Am. Complaint, ¶ 74). In other words, plaintiffs seem to allege that as official policy maker, they have established a *Monell* or official policy claim against him relating to the enactment of the state of emergency and curfew.

An official capacity claim against Sheriff Beth would be the equivalent to a claim against the County. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). When faced with an action alleging both municipal and official capacity claims, the latter are properly dismissed as redundant. *Smith v. Metro. Sch. District*, 128 F.3d 1014, 1020 n. 3 (7th Cir. 1997); *Tabor v. City of Chicago*, 10 F.Supp. 2d 988, 991 (N.D. Ill. 1998). Since Kenosha County is already a defendant in the case, any official capacity claims against Sheriff Beth must be dismissed as redundant.

## III.  KENOSHA COUNTY MUST BE DISMISSED AS PLAINTIFFS HAVE FAILED TO STATE SUFFICIENT ALLEGATIONS TO ESTABLISH ANY *MONELL* CLAIM AGAINST KENOSHA COUNTY.

Plaintiffs' Complaint fails to state a claim upon which relief can be granted against Kenosha County. "'[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives' by [municipal] policymakers." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483-484 (1986)). Under *Monell*, municipal liability exists only "when execution of a government's policy or custom, whether made by its law-makers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't. of Soc. Servs*., 436 U.S. 658, 694 (1978).

Liability under *Monell* may be premised on (1) an express policy that, when enforced, causes a constitutional violation; (2) a widespread practice that, although not authorized by

7

written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). With a *Monell* claim, there also must be a causal connection between the alleged unconstitutional policy or practice and the claimed injury. "[A] municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'" *City of Canton*, 489 U.S. at 388-89; *Monell,* 436 U.S. at 694.

Strict constraints limit the liability of Kenosha County for the unconstitutional acts of its employees or others under § 1983. A plaintiff cannot recover against a municipality under § 1983 for acts of its employees under a theory of *respondeat superior* or vicarious liability. *Gayton v. McCoy*, 593 F.3d 610, 622 (7th Cir. 2010). "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell,* 436 U.S. at 691.

Furthermore, it must be remembered that there can be no liability against Kenosha County if none of its employees caused any constitutional injury. The Seventh Circuit holds to the rule that there must be an alleged constitutional injury by an individual municipal employee: "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." *Thompson v. Boggs*, 33 F.3d 847, 859 n.11 (7th Cir. 1994) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)); *see also Sallenger v. City of Springfield*, 630 F.3d 499, 504 (7th Cir. 2010) ("[A] municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee.").

Plaintiffs' allegations as to municipal liability against Kenosha County still are confusing, conclusory or nonspecific and are insufficient to meet the required pleading standard for a

8

*Monell* claim. For example, Plaintiffs refer to "Kenosha's customs and policies of targeting journalist" but do not specify if this is meant to be City of Kenosha or Kenosha County. (*See* generally Dkt. 16, Am. Complaint, and ¶ 77). Of significance is that the majority of the Amended Complaint allegations can be characterized as to what specifically happened to the Plaintiffs at the time of the arrest and not on any specific policy which was the cause of this alleged selective enforcement. The actions of employees and especially employees of another municipality cannot be the basis of a *Monell* claim. *Gayton*, 593 F.3d at 622. Even reviewing Plaintiffs' allegations, the vast majority do not even mention or refer to Kenosha County, but rather, are couched in the specifics of the arrests which were not done by Kenosha County. In particular, Plaintiffs allege as follows:

- "This pattern and practice of conduct by Kenosha police and its officers tramples on the Constitution." (Dkt. 16, Am. Complaint, p. 2).

- Plaintiffs bring this action to ask the Court to restrain the City of Kenosha from further violations of the First Amendment and Equal Protection rights of peaceful demonstrators." (Dkt. 16, Am. Complaint, p. 2).

- "As a result of the Kenosha's customs and policies of targeting journalist, medics, and protestors in enforcement of the State of Emergency or curfew…" (Dkt. 16, Am. Complaint, ¶ 77).

- "…Defendants will continue to carry out their unconstitutional customs or policies of enforcing the State of Emergency ordinance and curfew with discriminatory intent with an intent to infringe on the right to assemble and speak on the basis of opinion and viewpoint." (Dkt. 16, Am. Complaint, ¶ 78).

9

Kenosha County and Sheriff Beth's questionable status and role in the alleged wrongdoing is further evidence by the lack of any specific "Municipal Allegations" against Kenosha County. While plaintiffs now have included Sheriff David Beth in those "Municipal Allegations", the statements are conclusory and insufficient to state a claim as to Kenosha County.

Second, the actual constitutional violations being alleged against Kenosha County and Sheriff Beth are unclear. While Plaintiffs allege violations against Kenosha County based on their Due Process and First Amendment rights, they at the same time allege violations of their "First, Fifth and Eighth Amendments". (See Dkt. 16, Am. Complaint, ¶ 10).

The only allegations expressly made against Kenosha County and Sheriff Beth are that Sheriff Beth improperly enacted an emergency curfew. Plaintiffs' conclusory allegation that there was an emergency curfew "instituted by Kenosha County," includes no citation to any ordinance, order, or other proclamation by Kenosha County. Rather, their claim is premised on their bald allegation that, "Sheriff David Beth is a final decision maker for Kenosha County" and his "decision to unilaterally issue a State of Emergency without legal authority is an official policy of Kenosha County." (Dkt. 16, Am. Complaint, ¶ 74). However, "not every action taken by employees with decision-making authority gives rise to the potential for liability . . . ." *Eversole v. Steele*, 59 F.3d 710, 715 (7th Cir. 1995) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–83 (1986)). Moreover, even if Sheriff Beth did issue press releases regarding this curfew, this alone does not arise to a constitutional violation which caused the injuries alleged.

In order for Sheriff Beth's conduct to create a policy he had to be a municipal policymaker with final authority in the area in question as defined by state law. *St. Louis v. Praprotnik*, 485 U.S. 112, 123-127 (1988); *Radic v. Chicago Transit Authority*, 73 F.3d 159, 161

(7th Cir. 1996). "[T]he liability of local governments under § 1983 instruct us to ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue," rather than in some generalized, categorical or "'all or nothing' manner." *McMillian v. Monroe Cty., Ala*., 520 U.S. 781, 784-785 (1997) "In order to have final policymaking authority, an official must possess '[r]esponsibility for making law or setting policy,' that is, 'authority to adopt rules for the conduct of government.'" *Killinger v. Johnson*, 389 F.3d 765, 771-772 (7th Cir. 2004) (emphasis added) (*quoting Rasche v. Village of Beecher*, 336 F.3d 588, 599 (7th Cir. 2003)). In order to prevail on a *Monell* claim premised on a policymaker's alleged decision, plaintiffs must show that a "policymaker responsible for establishing final policy with respect to the subject matter in question made a deliberate choice to follow a course of action from among various alternatives." *De Smet v. Snyder*, 653 F. Supp. 797, 802 (E.D. Wis. 1987); *Pembaur*, 475 U.S. at 483. In other words, Plaintiffs must show that the "policymaker's act [was] in conformance with, or in the creation of, governmental rules that have the effect of law (and then the rule must violate the plaintiff's constitutional rights)." *McGreal v. Ostrov*, 2002 WL 1784461, * 3 (N.D. Ill. 2002), *citing Auriemma v. Rice*, 957 F.2d 397, 400 (7th Cir. 1992).

Here, Plaintiff's allegations do not satisfy the elements for a policymaker-*Monell* claim against Kenosha County. Plaintiffs themselves allege only the County Executive could declare a state of emergency and Sheriff Beth had no authority to do so. (Dkt. 16, Am. Complaint, ¶ 20). Plaintiffs' claims against Kenosha County thus amount to nothing more than a cursory allegation that Sheriff Beth is a policymaker for Kenosha County.

The bottom line is that Plaintiffs' Amended Complaint is lacking in allegations as to Kenosha County and Sheriff Beth and whether there existed any official policy, practice or

custom which was the cause of any injury, including the alleged First Amendment retaliatory arrest or selective enforcement against individuals protesting against police brutality. Beyond identifying a curfew, which may or may not have been created by Kenosha County, Plaintiffs have not identified any specific written policy, which when enforced, was causal of their alleged improper arrests. The allegations here are not that the curfew restrictions, when enforced, caused the selective enforcement based on their political views. Rather, the gist of Plaintiffs' complaint is that they were treated differently from other protesters who were seen as "pro-police". The Complaint is silent as to whether these Press Releases said anything as to how the curfew should be enforced against protestors with differing viewpoints.

As seen by even a cursory view of the Amended Complaint, Plaintiffs' allegations fall far short of what is required to plead a *Monell* claim against a specific municipality. Plaintiffs' "threadbare recitals" are exactly the conclusory allegations the Supreme Court warned of in *Iqbal*. As such, Plaintiffs' claim against Kenosha County fail as a matter of law and must be dismissed.

## IV. PLAINTIFFS' DUE PROCESS CLAIMS AGAINST SHERIFF DAVID BETH AND KENOSHA COUNTY FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Plaintiffs bring three separate causes of action against Sheriff Beth and Kenosha County based on due process. This includes the following:

(1)     Count I:  Due Process-42 U.S.C. 1983 (David Beth and Kenosha County);

(2)     Count II:  Procedural Due Process-42 U.S.C. 1983 (David Beth and Kenosha County);

(3)     Count III:  Due Process-Shocks the Conscious-42 U.S.C. 1983 (David Beth and Kenosha County).

These separate claims are unclear as to whether they are directed against Sheriff Beth in his individual capacity, as alleged policymaker for Kenosha County, or if plaintiff is bringing a *Monell* claim against Kenosha County based on a policy, practice or procedure of alleged "due process" violations. These claims often refer to "David Beth" and do not have any allegations as to Kenosha County for policy, practice or procedure. Further, Plaintiffs do not explain how the curfew "denied their fundamental rights and liberty interests." (Am. Compl. ¶ 92). Nor do Plaintiffs even state whether they are claiming procedural due process violations, substantive due process violations, or both. Any allegations contained in the Amended Complaint are merely conclusory that are insufficient to state a claim. Plaintiffs do not make any allegations to satisfy even the pleading requirements for such a claim. Rather, all that is alleged is that Sheriff David Beth did not follow the Ordinances when he allegedly enacted the emergency curfew.

The First Amended Complaint makes no claim that the rioting and violent protests in Kenosha County between August 23, 2020 and September 2, 2020 did not warrant an emergency order or curfew. Plaintiffs acknowledge that "almost immediately" following the shooting of Jacob Black demonstrations in response to "police brutality" began and continued for the "following nine evenings." (Dkt. 16, Am. Complaint, ¶¶13, 14). Plaintiffs further acknowledge there was "destructive activity" during the demonstrations and that "many" of the "pro-police protestors carried automatic weapons, typified by Kyle Rittenhouse, the 17 year old who murdered two peaceful demonstrators in August." (Dkt. 16, Am. Complaint, ¶¶14, 39).

Instead, Plaintiffs Due Process claims against Sheriff David Beth and Kenosha County are premised on Sheriff David Beth's alleged failure to follow the Kenosha County municipal process in declaring a state of emergency or curfew. (Dkt. 16, ¶¶88-90, 96-98, 102-105). These allegations alone are insufficient to state a claim against either Sheriff Beth or Kenosha County.

## A. Plaintiffs Have No Constitutional Right to State Mandated Procedures.

The First Amended Complaint alleges that Sheriff David Beth did not follow Kenosha County ordinances for declaring a state of emergency. (Dkt. 16, Am. Complaint, ¶97) As an initial point, under Wisconsin law:

> The governing body of any local unit or government may declare, by ordinance or resolution, an emergency existing within the local unit of government whenever conditions arise by reason of a riot or civil commotion, a disaster, or an imminent threat of a disaster, that impairs transportation, food or fuel supplies, medical care, fire, health or police protection, or other critical systems of the local unit of government. The period of the emergency shall be limited by the ordinance or resolution to the time during which the emergency conditions exist or are likely to exist.

Wis. Stat. § 323. 11. The emergency power of the governing body conferred under Wis. Stat. §323.11 includes the general authority:

> To order, by ordinance or resolution, whatever is necessary and expedient for the health, safety, protection, and welfare of persons and property within the local unit of government in the emergency and includes the power to bar, restrict, or remove all unnecessary traffic, both vehicular and pedestrian, from the highways, notwithstanding any provision of chs. 341 to 349.

Wis. Stat. § 323.14. Plaintiffs plead in their First Amended Complaint that Sheriff Beth was a final decision maker for Kenosha County (Dkt. 16, Am. Complaint, ¶ 74) which if accepted as true allowed him the ability under state law to declare a state of emergency and order an emergency curfew.

Notwithstanding the validity of the state of emergency or emergency curfew order under state law procedures, the Supreme Court holds that federal courts lack the authority to direct state officials to comply with state law. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106 (1984); *Snowdon v. Hughes*, 321 U.S. 1, 11 (1944) ("Mere violation of a state statute does not infringe the federal Constitution."). In other words, a failure to follow an internal procedure or a state regulation does not constitute a constitutional violation. *See Thompson v.*

14

*City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) (violation of department procedure or state law is immaterial to whether actions violated federal constitutional right); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (Section 1983 provides a remedy for constitutional violations, not violations of state statutes or regulations); *Archie v. City of Racine*, 847 F.2d 1211, 1216-17 (7th Cir. 1988) (a violation of state law does not give rise to a Section 1983 claim unless it independently violates the Constitution or federal law). "Control of civil disorders that may threaten the very existence of the State is certainly within the police power of government." *Stotland v. Pennsylvania*, 398 U.S. 916, 920, 90 S.Ct. 1552, 1555, 26 L.Ed.2d 83 (1970) Moreover, negligence does not rise to the level of a constitution violation under § 1983. *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir.1992).

Thus, Plaintiffs' contention that Sheriff Beth's process of declaring a state of emergency and curfew violated Plaintiffs' federal constitutional right to procedural due process is simply incorrect, does not state a distinct constitutional claim, and must be dismissed.

**B.     There Are No Allegations of Any Conduct Shocking to the Conscience.**

In *DeShaney v. Winnebago County Department of Social Services*, 489 U.S.189, 195 (1989) the Supreme Court held that the Due Process Clause does not require the state to protect the life, liberty, and property of its citizens from deprivation by private individuals and does not act as a guarantee of certain minimal levels of safety and security. There are two exceptions to the general rule of *DeShaney*: (1) where the state has established a "special relationship" with an individual; and (2) where the state "'affirmatively places a particular individual in a position of danger the individual would not have otherwise faced.'" *Monfils v. Taylor*, 165 F.3d 511,516 (7th Cir. 1998). The Seventh Circuit has identified three elements of a claim under the state-created danger exception:

> (1) the state, by its affirmative acts, must create or increase a danger faced by an individual; (2) the state's failure to protect an individual from such a danger must be the proximate cause of the injury to the individual; and (3) the state's failure to protect the individual must shock the conscience.

*Buchanan-Moore v. City of Milwaukee*, 576 F. Supp.2d 944,951 (E.D .Wis.2008), aff'd in part, 570 F.3d 824 (7th Cir. 2009).

First, a plaintiff must establish some affirmative act on the part of the defendant "that either created a danger to the plaintiff or rendered him more vulnerable to an existing danger." *Stevens v. Umsted*, 131 F.3d 697, 705 (7th Cir.1997). The exception requires affirmative action by the state to place "a particular individual in a position of danger the individual would not otherwise have faced." *Id.* (internal quotation omitted); *see also Nabozny v. Podlesny*, 92 F.3d 446,460 (7th Cir. 1996). Here, Plaintiffs allege the affirmative act of declaring a state of emergency and curfew, created a danger to Plaintiffs. (Dkt. 16, Am. Complaint, ¶100). This affirmative act is too tenuous to the alleged injury and is not the type of affirmative act sufficient to establish such a claim.

Second, "[o]nly the most egregious official conduct will satisfy th[e] stringent [shocks the conscience] inquiry." *Jackson v. Indian Prairie Sch. Dist*. 204, 653 F.3d 647, 654 (7th Cir. 2011) (internal quotation omitted). Conduct is "conscience shocking when it evinces a deliberate indifference to the rights of the individual." *King v. E. St. Louis Sch. Dist.* 189,496 F.3d 812, 819 (7th Cir.2007). "[S]uffice it to say: governmental defendants must act with a *mens rea* akin to criminal recklessness for constitutional liability to attach." *Flint v. City of Belvidere*, 791 F.3d 764, 770 (7th Cir. 2015). "Neither bad decision making nor grossly negligent behavior meets the stringent test." *Id.*

To shock the conscience, a defendant's actions must do more than offend "some fastidious squeamishness or private sentimentalism;" a defendant's actions must be fairly viewed

as "brutal and offensive to human dignity." *Rochin v. California*, 342 U.S. 165, 172-74 (1952). The *Rochin* case is the seminal example of government conduct that shocks the conscience. In that case, law enforcement officials entered a man's house without a warrant, squeezed his neck, shoved their hands into his mouth to retrieve pills he had swallowed, and then took him to a hospital where liquid was forcibly pumped into his stomach to make him vomit. *Id.*; *see also Paine v. Cason*, 678 F.3d 500, 510 (7th Cir. 2012) (finding government conduct shocked conscience where scantily clad white female was released in a predominantly black neighborhood close to a public housing project with an exceptionally high crime rate, resulting in her being brutally victimized and left for dead); *Wilkins v. May*, 872 F.2d 190 (7th Cir. 1989) (FBI interrogators holding a gun to suspect's head to obtain confession raised at least a question for the jury on whether such conduct shocked the conscience).

Viewed against these examples, declaring a state of emergency and enacting an emergency curfew during a period of widespread riotous conditions, destruction of property, and loss of life is not "shocking to the conscience" in a way that even remotely begins to implicate the Fourteenth Amendment. Moreover, claims Sheriff David Beth did not follow municipal procedural requirements before declaring a state of emergency is also a far cry from the type of conduct recognized as conscience-shocking. "Humdrum legal error" does not violate substantive due process under the Fourteenth Amendment. *Harron v. Town of Franklin*, 660 F.3d 531, 536 (1st Cir. 2011).

C.   **Plaintiffs Have Failed to State a Claim Because Available State Court Remedies Satisfy Substantive and Procedural Due Process.**

1.   Count I – Due Process.

Count I of Plaintiff's Complaint contains a general "Due Process" claim against Sheriff David Beth and Kenosha County. This claim is vague, unsubstantiated, and lacks the required

17

factual support. The claim fails to put Defendants on notice as to whether Count I is alleging a procedural due process violation or a substantive due process violation. Further, Count I is particularly confusing when coupled with Counts II and III, which allege a violation of procedural due process and "Shocks the Conscious", respectively. Without more, Defendants lack the ability to further respond to Count I.

### 2. Count II – Procedural Due Process.

In order to bring a claim under the Fourteenth Amendment for a violation of procedural due process, a plaintiff must establish: (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process. *Buttitta v. City of Chicago*, 9 F.3d 1198, 1201 (7th Cir. 1993). "'[I]n evaluating what process satisfies the Due Process Clause, . . . the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees.'" *Leavel v. Illinois Dept. of Natural Resources*, 600 F.3d 798, 804 (7th Cir. 2010) (quoting *Rivera-Powell v. New York City Bd. Of Elections*, 470 F.3d 458, 465 (2d Cir. 2006)) (citations omitted). "If the plaintiff alleges that 'the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing.'" *Leavel*, 600 F.3d at 805 (quoting *Rivera-Powell*, 470 F.3d at 465). "Under those circumstances, 'the availability of post-deprivation procedures will not, *ipso facto*, satisfy due process.'" *Id.* (quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996)).

"By contrast, when the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides [a] meaningful post-deprivation remedy." *Id.* (internal quotation marks omitted). Thus, "for a plaintiff alleging a procedural due process claim based on 'random and unauthorized' conduct of a state actor, the

18

plaintiff must either avail herself of state post-deprivation remedies 'or demonstrate that the available remedies are inadequate.'" *Id.* (quoting *Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir. 1996); *see also Bettendorf v. St. Croix County*, 631 F.3d 421, 426 (7th Cir. 2011) (dismissing procedural due process claims based on a zoning designation where plaintiff himself initiated state court review and was afforded adequate process in state court system). In essence, the focus is on the remedial process, not the government's actions that allegedly deprived the Plaintiffs of their liberty or property interest.

In the present case, Plaintiffs allege only facts that appear to support the underlying constitutional harm allegedly suffered—the First Amendment claim. This is insufficient to establish a violation of procedural due process, which necessitates factual support dealing with issues such as a lack of notice or of a proper hearing, or specification as to how remedial procedures were constitutionally inadequate. Therefore, the Amended Complaint is deficient because it seeks relief under the Due Process Clause without putting Defendants on notice as to the specific factual allegations that support this unfounded claim.

Further, Plaintiffs were not deprived of their right to post-deprivation remedies. In fact, when Plaintiffs were arrested they were issued citations, which informed Plaintiffs that they were set for a return date before the court on a specified date.[9] Additionally, Plaintiffs' conduct and any prosecution for their conduct is open to challenge in state court, where the scope of the state

---

[9] Plaintiffs were arrested and issued citations. According to CCAP, the plaintiffs are set for a pretrial conference before the court on December 4, 2020. *See* Danika Gagliano-Deltgen, Kenosha County Case No. 20-FO-589, https://wcca.wicourts.gov/caseDetail.html?caseNo=2020FO000589&countyNo=30&index=0&mode=details#records, Kenosha County Case No. 20-FO-595, https://wcca.wicourts.gov/caseDetail.html?caseNo=2020FO000595&countyNo=30&index=0&mode=details; Oscar Walton, Kenosha County Case No. 20-FO-573, https://wcca.wicourts.gov/caseDetail.html?caseNo=2020FO000573&countyNo=30&index=0&mode=details; Adelana Akindes, Kenosha County Case No. 20-FO-596, https://wcca.wicourts.gov/caseDetail.html?caseNo=2020FO000596&countyNo=30&index=0&mode=details; Victor Garcia, Kenosha County Case No. 20-FO-594, https://wcca.wicourts.gov/caseDetail.html?caseNo=2020FO000594&countyNo=30&index=0&mode=details.

remedy available would be determined as a matter of state law, as well as under Fourteenth Amendment standards. The Constitution requires nothing more.

### 3. Count III – "Shocks the Conscious".

To state a claim under either substantive due process, Plaintiffs must show that state law remedies are inadequate. The Seventh Circuit has repeatedly held that "in addition to showing that the decision was arbitrary and irrational, the plaintiff must also show either a separate constitutional violation or the inadequacy of state law remedies." *Polenz v. Parrott*, 883 F.2d 551, 559 (7th Cir. 1989) (remanding substantive due process claim based on denial of an occupancy permit for a determination as to adequacy of state law remedies).

The First Amended Complaint alleges Mr. Beth purposely disregarded legal norms, and the law, and any semblance of the rule of law in ordering lawful conduct criminal without right. (Dkt. 16, Am. Complaint, ¶ 74). However, Supreme Court precedent establishes that a "[m]ere violation of a state statute does not infringe the federal Constitution. *Snowden v. Hughes*, 321 U.S. 1, 11, 64 S.Ct. 397 (1944). "And state action, even though illegal under state law, can be no more and no less constitutional under the Fourteenth Amendment than if it were sanctioned by the state legislature." *Id.*; *see also Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc). Therefore, by merely alleging that Mr. Beth acted "without legal authority" and "disregarded legal norms" is insufficient to allege a substantive due process violation.

## V. PLAINTIFFS' FIRST AMENDMENT FACIAL CHALLENGE FAILS.

Plaintiffs also assert a facial challenge to the curfew against Kenosha County. "Facial challenges are disfavored for several reasons." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008).

> Claims of facial invalidity often rest on speculation. As a consequence, they raise the risk of premature interpretation of statutes on the basis of factually barebones

records. Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.

*Id.* (internal quotations and citations omitted). Facial invalidation typically requires that "no set of circumstances exists under which the [law] would be valid," *United States v. Salerno*, 481 U.S. 739, 745 (1987), so the remedy "must be injunctive and declaratory." *Ezell v. City of Chicago*, 651 F.3d 684, 698 (7th Cir. 2011).

Facial challenges are generally not favored by the courts because they require a court to "formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied," and "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented consistent with the Constitution." *Wash. State Grange*, 552 U.S. at 451 (internal quotations omitted).

Courts have routinely upheld curfews that are enacted during a legal emergency. *See, e.g., Hirabayashi v. United States*, 320 U.S. 81 (1943) (upholding a curfew from 8:00 p.m. to 6:00 a.m. imposed on German and Italian noncitizens, and Japanese noncitizens and citizens during World War II); *Smith v. Avino*, 91 F.3d 105, 109 (11th Cir. 1996) ("when a curfew is imposed as an emergency measure in response to a natural disaster, the scope of review in cases challenging its constitutionality 'is limited to a determination whether the [executive's] actions were taken in good faith and whether there is some factual basis for the decision that the restrictions . . . imposed were necessary to maintain order.'"); *see ACLU of W. Tenn. v. Chandler*, 458 F. Supp. 456, 461–62 (W.D. Tenn. 1978) ("There can be no doubt that plaintiffs will suffer a limitation on the exercise of their first amendment rights as long as the curfew remains in effect. . . .However, it must be remembered that plaintiffs are free to exercise these

21

rights during other hours of the day, and that the curfew is an emergency measure which hopefully will not long remain in effect."); *United States v. Chalk*, 441 F.2d 1277, 1283 (4th Cir. 1971) ("The curfew imposed by the mayor was in effect city-wide. Unlike a curfew limited to black neighborhoods which would be 'immediately suspect' because of the possibility of racial discrimination . . . a city-wide curfew applies to all. In addition, the curfew applied only at night.")

The United States Supreme Court in *Hirabayashi v. United States*, 320 U.S. 81 (1943) uphold a curfew between the hours of 8:00 p.m. and 6:00 a.m. and reasoned:

> Like every military control of the population of a dangerous zone in war time, it necessarily involves some infringement of individual liberty, just as does the police establishment of fire lines during a fire, or the confinement of people to their houses during an air raid alarm—neither of which could be thought to be an infringement of constitutional right. Like them, the validity of the restraints of the curfew order depends on all the conditions which obtain at the time the curfew is imposed and which support the order imposing it.

*Id.* at 99.

While emergency curfews can impact the rights of speech and assembly by generally precluding all types of public activity during a portion of the day courts apply a particularly yielding reasonableness test when evaluating an emergency curfew. For emergency curfews, courts inquire only whether the curfew was enacted in good faith and whether a factual basis exists for the decision that such action was necessary to maintain order. *See Id.*

As argued above, the First Amended Complaint makes no claim that the community situation in Kenosha County between August 23, 2020 and September 2, 2020 did not warrant the use of the power to declare an emergency or curfew. Rather, Plaintiffs concede a factual basis for the curfew citing "destructive activity" during the demonstrations, "many" pro-police protestors carrying automatic weapons, and the murder of two peaceful demonstrators in

22

August." (Dkt. 16, Am. Complaint, ¶¶14, 39). Certainly, Sheriff Beth made every reasonable attempt to preserve the innocent citizens' First Amendment rights, while also ensuring the safety of the residents of Kenosha County and the City of Kenosha. He even stated that people were still allowed to protest peacefully, regardless of the curfew:

> We know that much of the damage is being inflicted by people coming in from outside our community, with the intent to rob and destroy, not to engage in their First Amendment right to demonstrate.

> The best thing our residents can do to stay safe is to stay home tonight and abide by the curfew that will be in effect from 8 p.m. until 7 a.m. tomorrow. If you want to protest peacefully, by all means go out and do it. It's your right. But don't be a part of this destructive force that's burning our community. That's not a productive path to justice.

Therefore, in light of *Hirabayashi* and its progeny, Plaintiffs' fail to state a claim for relief that is plausible on its face and instead only contains conclusory allegations not relevant to an emergency curfew facial challenge.

## VI. ANY ALLEGATIONS OF HARM FROM WRONGFUL ARREST OR SELECTIVE ENFORCMENT FAILS AS AGAINST SHERIFF BETH AND KENOSHA COUNTY.

While plaintiffs do not specifically allege a claim of First Amendment Retaliation or Selective Enforcement against Kenosha County, they do allege that the emergency curfew allegedly created by Kenosha County caused them harm through the alleged improper arrests. Probable cause is a bar to any claim of First Amendment retaliation. To establish a First Amendment Retaliation case against law enforcement officers, Plaintiffs must establish each of the following: (1) the plaintiffs engaged in protected speech; (2) the officers' adverse actions caused the plaintiffs to suffer an injury that would likely chill a person of ordinary firmness from continuing the activity; and (3) the First Amendment activity was a motivating factor in the officer's adverse action. *Williams v. Seniff*, 342 F.3d 774, 782 (7th Cir. 2003). In light of the

Supreme Court's recent ruling in *Nieves v. Bartlett*, 139 S.Ct. 1715 (2019), in cases alleging retaliation in the form of an arrest, the existence of probable cause defeats a retaliatory arrest claim.

While Plaintiffs question if the curfew order was validly enacted, the validity of the curfew order is irrelevant to the probable cause analysis. At the heart of the probable cause analysis is "what the police know, not whether they know the truth . . . ." *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 439 (7th Cir. 1986). Thus, in making the probable cause determination, the test is an objective one: "whether a reasonable officer would have believed the person had committed a crime. If so, the arrest is lawful even if the belief would have been mistaken." *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998).

Kenosha County and Sheriff Beth incorporate by reference the City of Kenosha's argument that this Court lacks subject matter jurisdiction:

> Until the citations against the Plaintiffs reach a disposition in the state court proceedings, which will necessarily address whether they were supported by probable cause, the First Amendment retaliatory arrest claims are not mature or ripe to convey federal court subject matter jurisdiction. See Forrester v. City of San Diego, 25 F.3d 804, 807 (9th Cir. 1994) (a city may well have "a legitimate interest in quickly dispersing and removing lawbreakers with the least risk of injury to police and others. Although many of [those] crimes were misdemeanors, the city's interest in preventing their widespread occurrence was significant: 'The wholesale commission of common state-law crimes creates dangers that are far from ordinary. Even in the context of political protest, persistent, organized, premeditated lawlessness menaces in a unique way the capacity of a State to maintain order and preserve the rights of its citizens.'").[10]

Furthermore, as Plaintiffs' pending ordinance violations and the issues of probable cause are not yet resolved by the Courts,[11] these claims may be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). "Under the rule of the *Heck* case, a civil rights suit cannot be maintained by a prisoner if a judgment in his favor would 'necessarily imply' that his conviction had been

---

[10] *See* City Brief at 15-16.
[11] Plaintiffs' Pretrial Date for their Arrest and Citations is December 4, 2020. See Footnote 9.

24

invalid". *Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011) (citing *Heck*, 512 U.S. 487). "The *Heck* rule is analogous to collateral estoppel: an issue determined with finality in a full and fair adjudicative proceeding (and essential to the decision in that proceeding) cannot be reopened in a subsequent case." *Moore*, 652 F.3d at 723 (citing *Gilbert v. Cook*, 512 F.3d 899, 901 (7th Cir. 2008); *Ballard v. Burton*, 444 F.3d 391, 397 (5th Cir. 2006)). "The reason for requiring that the issue have been essential is that if resolving the issue was irrelevant to the outcome of the case, there was neither incentive to challenge that resolution on appeal nor reason for the appellate court to consider such a challenge." *Moore*, 652 F.3d at 723. Further, the rule of *Heck* is intended to prevent collateral attack on a criminal conviction through the vehicle of a civil suit. *Heck*, 512 U.S. at 484; *see also Mulholland v. Marion County Election Bd.*, 746 F.3d 811, 815 (7th Cir. 2014) (citing *Younger v. Harris*, 401 U.S. 37, 91 (1971) (the *Younger* abstention doctrine is called for "in exactly three classes of cases," including "where federal jurisdiction would intrude into ongoing state criminal proceedings" and "it requires that federal courts dismiss such cases rather than intervene in state affairs").

Should the Plaintiffs succeed in their § 1983 action that they were arrested on improper grounds and without probable cause, it would necessarily imply the invalidity of any findings of guilt relating to these arrests and issuance of citations. The Plaintiffs will essentially be attempting a collateral attack on any convictions relating to those arrests via these § 1983 claims. Furthermore, the *Younger* abstention doctrine may also warrant dismissal as the circumstances of this case may require this federal court to intervene into ongoing state criminal proceeds. As the Plaintiffs' pretrial dates not until December 4, 2020, if Kenosha County is not dismissed outright, Plaintiffs' claims should be stayed pursuant to *Wallace v. Kato*, 549 U.S. 384, 393 (2007).

25

## CONCLUSION

For the aforementioned reasons, Kenosha County and Sheriff David Beth respectfully request that all claims alleged against Sheriff David Beth and Kenosha County be dismissed with prejudice for failure to state a claim.

Dated this 11th day of November, 2020.

CRIVELLO CARLSON, S.C.
Attorneys for Defendant Kenosha County

BY:   *s/Amy J. Doyle*

SAMUEL C. HALL, JR. (1045476)
AMY J. DOYLE (1001333)
KILEY B. ZELLNER (1056806)
MICAELA E. HAGGENJOS (1118840)
CRIVELLO CARLSON, S.C.
710 N. Plankinton Avenue, Suite 500
Milwaukee, WI 53203
Phone: 414-271-7722 / Fax: 414-271-4438
E-mail: shall@crivellocarlson.com
adoyle@crivellocarlson.com
kzellner@crivellocarlson.com
mhaggenjos@crivellocarlson.com

26