# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

Civil Action No.

ADELANA AKINDES; OSCAR WALTON; DANICA GAGLIANO-DELTGEN; and VICTOR GARCIA *On behalf of themselves and other similarly situated individuals*,
    Plaintiffs,

v.

CITY OF KENOSHA; KENOSHA COUNTY; DAVID BETH, IN HIS INDIVIDUAL CAPACITY; DANIEL MISKINIS; IN HIS INDIVIDUAL CAPACITY; AND JOHN DOES 1-100, IN THEIR INDIVIDUAL CAPACITIES.
    Defendants.

---

## PLAINTIFFS' RESPONSE TO CITY OF KENOSHA, DANIEL MISKINIS AND JOHN DOES 1-100'S MOTION TO DISMISS

---

Plaintiffs, by and through their undersigned counsel, provide their response to Defendant City of Kenosha, Daniel Miskinis and John Does 1-100's Motion to Dismiss [ECF No. 18] as follows:

### INTRODUCTION

This case presents the court with questions about the use of criminal sanction to punish protesters for the views they express. Over nine evenings in August and September, the Kenosha police department enforced a curfew it knew to be unlawful and enforced it in a discriminatory and retaliatory manner. Plaintiffs have adequately plead all elements of each claim against each Defendant and therefor Defendants' motion should be denied.

**STATEMENT OF FACTS**

On August 23, 2020, an officer of the Kenosha Police Department shot Jacob Blake in the back seven times. Am. Compl., ECF No.16, ¶ 12. This incident was captured on video as have other incidents of police brutality like the killing of George Floyd this summer, The police brutality displayed by the Kenosha police officer immediately renewed the debate on systematic racism and police violence directed at Black Americans. *Id.* ¶ 12. Residents of Kenosha assembled at the site of Jacob Blake shooting that evening and thereafter marched to the courthouse to demand an end to police brutality. *Id.* ¶ 13. The Kenosha police responded that they did not need to hear these complaints. *Id.* ¶ 16.

However, these protests of the Kenosha police department's own brutality continued for nine, mostly peaceful nights. *Id.* ¶ 14. The exception of course was the killing of two anti-police brutality protesters and maiming of a third at the hands of white nationalists who freely roamed the streets of Kenosha with semi-automatic weapons and with the aid and encouragement of the Kenosha Police. *Id.* ¶¶ 38-43, Ex. 7, Ex. 8 [ECF No. 16]. In response to protests against the brutality of law enforcement in Kenosha, the Kenosha County Sheriff David Beth declared a state of Emergency Curfew. *Id.* ¶ 23. Sheriff Beth had no legal authority to do so. *Id.*¶¶ 20-22. Apparently not liking the message of the protesters, Sheriff Beth independently declared himself the law and made the simple act of being outside in the community of Kenosha a criminal act. Chief of Police Daniel Miskinis was aware that Sheriff Beth lacked the authority to do so and his declarations of a curfew had no legal effect. *Id.* ¶¶ 88, 108-109. Nonetheless, Chief Miskinis directed his police officers to arrest protesters under this order he knew to be unlawful. *Id.* ¶¶ 25, 28, 32. In addition, Chief Miskinis knowingly allowed his officers to engage in widespread

police misconduct while also simultaneously violating the Fourth Amendment to any persons who were arrested and punished for peacefully protesting.

Kenosha police officers followed this direction and arrested over one hundred and fifty protesters for violating the unlawful curfew order over the following week. *Id.* ¶ 45. What quickly became clear was that in addition to providing supplies and encouragement to the many armed white nationalists, those same militia members were also protected from enforcement of the curfew. *Id.* ¶¶ 41- 43. Every single person arrested under this curfew order expressed opinions opposing police brutality while those protesters out to support the police and violating the same curfew were completely free from arrest and protected by the Kenosha police. *Id.* ¶¶ 46-50.

## STANDARD OF REVIEW

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is to test the sufficiency of the pleadings, not to decide the merits of the case. *See Gibson v. Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must contain enough factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This means that the Court must treat all of the plaintiff's factual allegations as true and draw all reasonable inferences in his favor. *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013) (citing *Fail-Safe, LLC v. A.O. Smith Corp.*, 674 F.3d 889, 892 (7th Cir. 2012). A complaint is facially plausible if a court can reasonably infer from factual content in the pleading that the defendant is liable for the alleged wrongdoing. *Id.* When evaluating the sufficiency of a complaint under Rule 12(b)(6), the

Court must construe it in the light most favorable to the plaintiff, accept well-pleaded facts as true, and draw all inferences in his favor. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). When matters outside the pleadings are presented to the court, under Rule 12(d), the court must either convert the motion into a summary judgment motion or exclude the documents attached to the motion to dismiss. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 2006).

## ARGUMENT

1. ***Miskinis Lacked Probable Cause Because He Knew that No Criminal Conduct Could Arise from an Order He Knew to be Unlawful.***

Plaintiffs were arrested under an unlawful curfew order. When Police Chief Miskinis ordered his police officers to arrest protesters under this unlawful order, he knew that it lacked any legal basis and had been announced at the whim of another law enforcement officer without the power to issue such an order. He knew that the arrests that would flow from this order would be without probable cause - because he knew that the conduct was not criminal because the order was not lawful. Nonetheless, he directed his officers to arrest people without probable cause.

Plaintiffs have clearly alleged that there was no probable cause for their arrests. Throughout the Amended Complaint, Plaintiffs alleged that the curfew order was unlawful and a direct assault on the rule of law. Plaintiffs alleged that only the County Executive can declare a state of emergency. *Id.* ¶ 46. Plaintiffs further alleged that Sheriff Beth declared the emergency and that in doing so, decided that he was the law. *Id.* ¶¶ 21, 87. Plaintiffs have alleged that no law gave Sheriff Beth this right. *Id.* ¶ 89. And Plaintiffs have alleged that Chief Miskinis was aware that Sheriff Beth lacked this legal authority. *Id.* ¶ 109. Throughout, Plaintiffs alleged that

this curfew order was unlawful and ineffective. A natural - a necessary - inference is that any arrests that flow from this illegal order lack probable cause. Defendants' entire argument rests on the failure to allege lack of probable cause. On this basis, Defendants' argument fails.

Defendants Daniel Miskinis and the City of Kenosha apparently argue that probable cause exists even when there is no crime. This is not how the criminal law system works in the United States. For Defendants to argue that any order, even those known to be unlawful, can constitute probable cause is a troubling idea. The crux of a probable cause inquiry is about whether a crime has been committed. *Lewis v. City of Chicago*, 914 F.3d 472, 478 (7th Cir. 2019). Chief Miskinis knew that no crimes could be committed because the order could not create criminal conduct.

### a. Miskinis Was a Final Policymaker for the Kenosha Police Department.

In *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), the Supreme Court held that municipalities are "persons" for purposes of 42 U.S.C. § 1983, and thus may be held liable for violations of civil rights, so long as the municipality has adopted or otherwise promulgated a policy or custom that violated the plaintiff's constitutional rights. *Monell*, 436 U.S. at 690. To state a *Monell* claim, the plaintiff must plead factual content that would allow the Court to draw a reasonable inference that: (1) he has suffered the deprivation of a constitutional right; and (2) that an official custom or policy of the City caused that deprivation. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011); *Monell,* 436 U.S. at 694–95. To satisfy the second element under *Monell*, the plaintiff will have to establish that his constitutional violation was "caused by (1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with 'final policymaking authority.'" *Milestone*

*v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011) quoting *Darchak v. City of Chi. Bd. of Ed.,* 580 F.3d 622, 629 (7th Cir.2009)).

Whether an agent has final policymaking authority is a question of state or local law. *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737, (1989); *Kujawski v. Bd. of Comm'rs of Bartholomew Cnty., Ind.,* 183 F.3d 734, 737 (7th Cir.1999). Whether a public official has final policymaking authority often turns on whether his decisions are subject to review by a higher official or other authority. *See Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 469 (7th Cir. 2001). When courts are considering the status of an officer as one with final policymaking authority, they "ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue." *McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 785 (1997).

While Defendants would suggest that only the Mayor is a final policymaker for the purposes of *Monell*, this is an incorrect reading of caselaw. The Supreme Court has held that multiple officials may be determined to have final policymaking authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988). More to the point, the question is not whether Miskinis is the last voice, but whether he is responsible for the policy relating to law enforcement. Here, he ordered that a curfew be enforced through criminal punishment. As the chief of police, he did this in a policymaking role.

2. ***Kenosha Police Officers Selectively Enforced the Curfew to Silence Voices Protesting Police Violence***

John Doe Kenosha police officers violated the Equal Protection rights of Plaintiffs by enforcing an emergency curfew regulation against only those who voiced opposition to police

violence. These Defendants did so out of animus for Plaintiff's opinions. While the Kenosha police thanked white nationalists and militiamen for their support during a the hours of the curfew and did not arrest a single such pro-police protester, these officers, as part of an informal policy of the Kenosha police, arrested over one hundred and fifty people in a selective, discriminatory, and unconstitutional manner based solely on the opinions they expressed.

The Equal Protection Clause of the Fourteenth Amendment protects individuals from discriminatory administration and enforcement of the law. "There are two pertinent types of Equal Protection claims: a claim that one has been treated differently based on a suspect classification, and a claim of selective enforcement of the law." *Jackson v. City of Moline*, 2006 WL 1554075, at *14 (C.D. Ill. 2006). To succeed on a selective enforcement or class of one equal protection claim, a Plaintiff must show that they were (1) "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment" or (2) "that the government is treating unequally those individuals who are prima facie identical in all relevant respects, and that the cause of the differential treatment is a 'totally illegitimate animus toward the plaintiff by the defendant.'" *Albiero v. City of Kankakee,* 246 F.3d 927, 932 (7th Cir.2001). As the 7th circuit explained in *Indiana State Teachers Ass'n v. Board of School Commissioners*, 101 F.3d 1179, 1181 (7th Cir.1996), where people identical in relevant ways are treated differently, the disadvantaged person can state an equal protection claim. See also *Ciechon*, 686 F.2d at 522–23.

Courts have also held that the selective enforcement of the law violates the Equal Protection Clause where such decisions are made in retaliation for the exercise of a constitutional right such as the right to free speech. *Esmail v. Macrane*, 53 F.3d 176, 179 (7th Cir.1995); See

also *Wayte v. United States*, 470 U.S. 598, 608 (1985) ("[T]he decision to prosecute may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, including the exercise of protected statutory and constitutional rights."). In *Esmail*, the court found that an Equal Protection claim is also actionable "where the power of government is brought to bear on a harmless individual merely because a powerful state or local official harbors a malignant animosity toward him." *Esmail*, 53 F.3d at 179.

In this case, Plaintiffs have easily pled a valid claim for violations of their equal protection rights under selective enforcement jurisprudence. Plaintiffs have alleged that they were treated unequally to those who were similarly situated - those members of the public who were also in violation of the curfew order. Am. Compl. ¶ 46-50. This satisfies the first element of a selective enforcement claim. Plaintiffs have alleged that the pro-police militiamen were not arrested under the curfew because of their supportive opinions of the Kenosha police. *Id.* ¶¶ 41, 43. Plaintiffs have also alleged that the basis for their arrests in contrast to the non-arrests of pro-police militia members was "based on their anti-police brutality opinions." *Id.* ¶ 49. Plaintiffs further alleged that the Kenosha police officers "showed an unwillingness to enforce the State of Emergency in a viewpoint neutral manner...instead us[ing] it as a tool to silence peaceful protesters who date to confront this police department's brutality." *Id.* ¶ 51. These allegations each show that the Kenosha police officers acted with an animus towards Plaintiffs on the basis of the viewpoint of their expressive activity. To discriminate on the basis of the content of an individual's viewpoints or opinions is to discriminate on the basis of a constitutional right. *Esmail*, 53 F.3d at 179.

The Seventh Circuit has rejected the argument that "selective enforcement of the law can never violate the equal protection clause under a class-of-one theory because of the discretion inherent in police power." *Hanes v. Zurick,* 578 F.3d 491, 492, 494 (7th Cir.2009); *see also Geinosky,* 675 F.3d at 747 ("Although the police are necessarily afforded wide discretion in performing their duties, that discretion does not extend to discriminating against or harassing people."). Although the Defendants would seek to shroud this discrimination as within the proper discretion of a police officer, Seventh Circuit caselaw points the other way. More to the point, Plaintiffs have not alleged that there was something random about these arrests as is the case in *Sutton v. City of Milwaukee*, 672 F.2d 644 (7th Cir. 1982). Plaintiffs have made clear that the moving force behind their arrests was the animus Kenosha police officers held towards them for expressing anti-police brutality messages. A law enforcement officer "motivated by malice alone is not exercising discretion and is not weighing the factors relevant to the officer's duty to the public," and therefore a plaintiff can state a claim under a class-of-one theory by alleging that he is targeted for arrest because "the officer hates the arrestee." *Hanes,* 578 F.3d at 496.

Defendants next argue that selective enforcement "requires identification of others who were not prosecuted." ECF 24 p. 18. While this is a correct reading of *Chavez v. Illinois State Police*, 251 F.3d 612 (7th Cir. 2001) as it relates to prosecutorial decisions, it's also a jarring effort to misrepresent the holding in this case to the court. As the same very discussion in *Chavez* explains, while it may be necessary to name an individual in the context of prosecution, when it comes to police conduct "plaintiffs do not have to provide the court with the name of an individual who was not stopped. *Chavez*, 251 F.3d at 640. The Seventh Circuit does not require the naming of a similarly situated individual who was not treated as the Plaintiff was. *Geinosky*

*v. City of Chicago*, 675 F.3d 743, 748 (7th Cir. 2012). Nonetheless, an entire class of individuals - pro-police militiamen and white nationalists present in Kenosha over these nine nights - and have also identified an individual in Kyle Rittenhouse who was not subject to enforcement of the curfew. While Defendants would seek to narrow the class to protesters, the proper class of people is anyone outside in violation of the facial terms of the curfew.

Courts have also looked to the pattern of conduct alleged in finding that a Plaintiff has successfully stated a claim for relief under a class-of-one theory of Equal Protection. *Geinosky*, 675 F.3d at 748. Here, the Amended Complaint states that over one hundred fifty protesters were arrested, all with one defining characteristic - that they were protesting the brutality of the Kenosha Police Department. Am. Compl. ¶¶ 45, 49. This pattern makes clear that the arrests were not random or within the proper discretion of one officer, but instead were part of a clear message that protesting police brutality would be met with criminal sanction and that the driving cause of each arrest was the personal animus of each police officer and the Kenosha Police Department as a whole against those who protested Kenosha's own brutality.

Lastly, a finding of probable cause does not cure discrimination under the Equal Protection Clause. *Hilton v. City of Wheeling*, 209 F.3d 1005, 1006 (7th Cir. 2000). If the mere presence of probable cause were sufficient, then there would be no availability of a selective enforcement claim - those claims could be resolved on the basis of unlawful seizure. While the Kenosha police may wish they could discriminate on the basis of race, gender, or constitutionally protected conduct once they've established probable cause, this is exactly the concern that the Equal Protection clause was enacted to address. *McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th Cir. 2011) (discussing discriminatory enforcement of laws in the South during

Reconstruction). Defendants efforts to warp Plaintiffs' claims into a demand that every person in violation of the curfew be arrested is to no avail. Plaintiffs only demand that the law be enforced without bias, without discimination, and without animus based solely on the viewpoint one expresses.

### a. Municipal Liability

Plaintiffs have alleged that over the course of nine nights, Defendants conducted an exacting policy of arresting only those protesters who expressed anti-police brutality viewpoints. That one hundred and fifty people could be arrested by nearly as many police officers, and each share this one characteristic creates a strong presumption that these arrests were pursuant to a policy, either directed by supervisors or a custom that the police officers agreed to follow. While Kenosha may avoid liability for one or two nights of discriminatory arrests, this pattern, known to all in the community, persisted for over a week. The length and consistency of this custom or policy goes to the degree to which the city was aware of a discriminatory custom and failed to stop such unconstitutional conduct.

### 3. First Amendment Retaliation

### a. *Plaintiffs have Properly Pled First Amendment Retaliation Claims Under Nieves Because they Have Properly Pled the No-Probable-Cause Exception*

Defendants entire argument is that because Plaintiffs have not argued a lack of probable cause, their claims for First Amendment retaliation fail. Defendants make no arguments that Plaintiffs have failed to establish that they engaged in protected activity, that they would not be deterred from engaging in such protected activity in the future based on a deprivation, nor that the protected activity was not a motivating factor in defendants' decision to take retaliatory

action. Therefore, if this court determines that *Nieves* is not the absolute bar that Defendants hold it out to be, Defendants argument should fail on that basis alone. *Nieves v. Bartlett,* 139 S. Ct. 1715 (2019).

To prevail on a First Amendment retaliation claim, the plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendant's decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). As a general rule, *Nieves* does hold that a plaintiff must make a "threshold showing of the absence of probable cause." *Nieves*, 139 S. Ct. at 1727. But as Defendants are aware, yet fail to mention in their brief, there is an important exception to this otherwise broad rule: "that the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.*

Here, there is no question that Plaintiffs have alleged that they were treated differently than similarly situated individuals. Plaintiffs were arrested in retaliation for protesting police violence. Compl. ¶ 46-51. There were similarly situated individuals out to support and express their support for the police. These pro-police protesters were not arrested. Compl. ¶ 46-51. On this basis alone, Defendants' motion to dismiss Plaintiffs' claims for First Amendment retaliation should be denied.

Plaintiffs have alleged that Defendants John Doe police officers arrested them for the viewpoint of their protest. Compl. ¶ 46-51. The right to protest, especially the right to protest the conduct of government action, is fundamental to the rights conferred by the first amendment and

is a form "classically political speech." *Boos v. Barry*, 485 U.S. 312, 318 (1988). The First Amendment "reflects a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and [we] have consistently commented on the central importance of protecting speech on public issues. *Id.* Additionally, the Supreme Court "has repeatedly held that police may not interfere with orderly, nonviolent protests merely because they disagree with the content of the speech or because they simply fear possible disorder." *Jones v. Parmley*, 465 F.3d 46, 56 (2d Cir. 2006) (citing *Cox v. Louisiana*, 379 U.S. 536, 550 (1965) ( "*Cox I*" ); *Edwards v. South Carolina*, 372 U.S. 229, 237 (1963) (political protest speech is protected even though it invites dispute and may stir people to anger). Further, "it has long been clearly established that the First Amendment bars retaliation for protected speech and association." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1292 (10th Cir. 2008) (quoting *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 848 (10th Cir. 2005)).

The threat of, and indeed actual arrest of Plaintiffs undoubtedly would chill a person of ordinary firmness from continuing to engage in such constitutionally protected speech and demonstrations. Finally, Plaintiffs' speech was the moving cause of Defendants' retaliation. Compl. ¶ 49, 51.

    b. *Defendants' Monell Argument Fails Because of the No-Probable-Cause Exception to Nieves*

Defendants make one argument that Plaintiffs failed to satisfy *Monell* in their First Amendment Retaliation claim: that they are required to plead that their arrests lacked probable cause on the basis of *Nieves*. As discussed above and Defendants are well aware, there is a significant exception to the broad *Nieves* rule and that exception closely fits the allegations

contained in the Amended Complaint. Because Plaintiffs have alleged that they were treated differently than similarly situated individuals who were not subject to arrest on the basis of the viewpoints they separately expressed, Plaintiffs have sufficiently pled this claim. Because Defendants failed to make any other argument under *Monell*, their motion to dismiss the First Amendment Retaliation claim against the City of Kenosha also fails.

   4. *Individual Defendants' Argument for Qualified Immunity Fail*

Defendants' first argument in favor of qualified immunity is that they acted in good faith. Apparently, the Kenosha police believe that they can intentionally discriminate and retaliate on the basis of one's viewpoint in good faith. Nothing could be further from the truth. The allegations contained in the Amended Complaint spell out seriously troubling behavior and intentional denials of civil rights because the Plaintiffs were protesting the brutality of this very police department. The officers knew what they were doing, and that the use of arrest to silence those who they disagreed with is the definition of bad faith.

*Nieves* makes clear that retaliation for the exercise of first amendment rights is a constitutional violation and will give rise to a claim if the police treat similarly situated individuals differently. Although Defendants would like to make this case about their knowledge of the legality of the curfew, the claims against the individual police officers is about their use of criminal sanction under the curfew to discriminate and silence the speech of those with whom they disagree.

In regards to Plaintiffs' claims under the Equal Protection clause for selective enforcement, Defendants have similarly failed to argue anything other than general *good faith*. As mentioned above, nothing could be further from the truth. Additionally, in *Hanes v. Zurick*,

578 F.3d 491, 496 (7th Cir. 2009), the court held that the right to be free from arrest based on an officer's personal animus is a clearly established right.

5. *Issues of Standing.*

Plaintiffs agree to drop their request for injunctive relief at this time. While Plaintiffs reserve the right to move to amend the Complaint should the Defendants engage in similar behavior during the pendency of this case, at this time, Plaintiffs will withdraw this request. The presence of requests for injunctive relief reside in how this lawsuit was initiated - during a period when the Kenosha police continued to arrest peaceful protesters based on the viewpoint they expressed and based upon an unlawful curfew order. After Plaintiffs filed this lawsuit, Defendants immediately agreed to end the curfew. Given that the goal of a Temporary Restraining Order is unnecessary at this time, Plaintiffs will agree to dismiss this request.

6. *Younger*

When courts consider abstention doctrines such as *Younger*, the general rule is that the Court has a " 'virtually unflagging' " obligation to hear and decide cases over which it has jurisdiction. *Sprint Comm'ns, Inc. v. Jacobs,* 571 U.S. 69 (2013) (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976)). Even "[p]arallel state-court proceedings do not detract from that obligation." *Sprint*, 571 at 77. Defendants read *Younger v. Harris*, 401 U.S. 37 (1971) too broadly. *Younger* held that federal courts should abstain from hearing suits to enjoin state criminal proceedings, even if those proceedings are based on an allegedly unconstitutional statute. *Id.* at 40. Plaintiffs have never asked this court to enjoin the state criminal proceedings. Plaintiffs' requests for injunctive relief have always been about enjoining the unconstitutional conduct of the Kenosha police. More recently, the Supreme Court

has limited *Younger*. In *Sprint Communications Inc. v. Jacobs*, 571 U.S. 69 (2013), the court stressed that the circumstances fitting within *Younger* are "exceptional." Should the court determine that *Younger* does apply, it should only operate on Plaintifffs' claims for unlawful seizure. Whether Defendants discriminated against Plaintiffs or retaliated against Plaintiffs for their expressions has no bearing on the state cases and is wholly separate from any *Younger* analysis.

7. **Heck**

The court need not consider *Heck v. Humprhrey*, 512 U.S. 477 (1994) in this matter. Although *Heck* can have preclusive effect, in this case, it may only have preclusive effect on claims for unlawful seizure. As discussed above, probable cause is not necessary to state a claim for First Amendment Retaliation or Selective Enforcement. Indeed, even a conviction for the underlying criminal offenses would not have any preclusive effect on two of Plaintiffs' three claims against the Defendants. The elements of these two claims are not undermined by a conviction under *Heck*. Defendants do not even address these issues, just issuing a blanket argument, without discussion, that "[s]hould Plaintiffs ultimately be convicted, the *Heck* doctrine requires that their case be dismissed." Lastly, Defendants seek to dismissal, not a stay, of this proceeding in their motion. The prospectively apply *Heck* without any basis and declare that because Plaintiffs may conceivably be convicted in the future, their claims should be dismissed now.

Respectfully submitted this 2nd day of December 2020.

<pre>
                    Kimberley Cy. Motley
                    2206 Bonnie Butler Way
                    Charlotte, North Carolina 28270

                    E. Milo Schwab
                    3000 Lawrence Street
                    Denver, CO 80205


                    **ATTORNEYS FOR PLAINTIFFS**
</pre>