IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

ADELANA AKINDES, OSCAR WALTON,
DANICA GAGLIANO-DELTGEN; and VICTOR
GARCIA On behalf of themselves and other
similarly situated individuals,

       Plaintiffs,

   v.

Case No. 20-CV-01353

CITY OF KENOSHA; KENOSHA COUNTY;
DAVID BETH, in his individual capacity;
DANIEL MISKINS, in his individual capacity;
and JOHN DOES 1-100, in their individual capacities,

       Defendants.

**KENOSHA COUNTY AND DAVID BETH'S REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defendants, Kenosha County and David Beth, by their attorneys, Crivello Carlson, S.C., submit the following Reply Brief in support of their motion to Dismiss Plaintiffs' First Amended Complaint.

**I. PLAINTIFFS' FIRST AMENDED COMPLAINT AS IT PERTAINS TO SHERIFF BETH AND KENOSHA COUNTY FAILS TO CONTAIN ALLEGATIONS THAT STATE A CLAIM FOR RELIEF THAT IS PLAUSIBLE ON ITS FACE.**

Plaintiffs have not sufficiently pled in the Amended Complaint factual content that would allow this Court to draw the reasonable inference that Kenosha County or Sheriff Beth caused any constitutional or other harm to occur. The only claims in the Amended Complaint against Sheriff Beth and/or Kenosha County are limited to how the press releases were given or how the state of emergency and curfew was enacted. According to plaintiffs, the proper procedures were not

1

followed as required under County Ordinances. Plaintiffs do not make a claim of unlawful seizure, selective enforcement or First Amendment retaliation against the Sheriff or Kenosha County. In other words, the Plaintiffs' claims against the County are not based on the actual arrests or how they occurred. Yet, Plaintiffs continuously attempt to group Kenosha County with officers employed by the City of Kenosha Police Department, who were the *only* officers to conduct arrests pursuant to the emergency curfew. (*See* Am. Compl. ¶¶ 57, 60, 64, 68). In order to confuse the facts and to wrongly create the appearance of liability on Kenosha County, Plaintiffs' Amended Complaint includes the following allegations:

1. The Kenosha police officers and *sheriffs* did not enforce this curfew under a State of Emergency in a viewpoint neutral manner. (Dkt. 16, Introduction paragraph)(emphasis added).

2. The Kenosha police officers *and sheriffs* showed an unwillingness to enforce the State of Emergency in a viewpoint neutral manner. Instead they used it as a tool to silence those peaceful protesters who dare to confront this police department's brutality. (Dkt. 16, ¶ 51)(emphasis added).

3. The Kenosha police officers *and sheriffs* are supposed to serve and protect the residents of Kenosha. (Dkt. 16, ¶ 52)(emphasis added).

While the Amended Complaint suggests Sheriff Deputies had involvement in the arrests, Plaintiffs rightfully do not allege (1) that either Sheriff Beth or any of his deputy sheriffs were actually involved in the arrests of any of the plaintiffs, or (2) that Sheriff Beth had directed any of the City of Kenosha officers to arrest any of the Plaintiffs. Therefore, there are deficient allegations against the County defendants based on alleged constitutional or other violations arising out of the arrests of the Plaintiffs.

Despite the Plaintiffs' attempt to confuse the issue, the only actual allegations against Sheriff Beth and Kenosha County as stated in the Amended Complaint relate to the issuance of press releases (explaining the emergency curfew) and nothing more. Most notably, there are no

2

Case 2:20-cv-01353-JPS    Filed 12/16/20    Page 2 of 14    Document 27

allegations in the Plaintiffs' Amended Complaint that these press releases directed arrests in violation of constitutional rights or that they were to arrest only individuals opposed to police. Furthermore, there are no allegations that Sheriff Beth did anything related to the arrests which would may form the basis of an individual capacity claim. More importantly, Plaintiffs' allegations are confusing as to which allegations are against Sheriff Beth in his individual capacity and which form the basis of their *Monell* claim against Kenosha County. Plaintiffs seem to intertwine these two when they allege that Sheriff Beth did not follow the correct procedure under County Ordinances. Without sufficient and clear factual allegations as to who did what and the factual basis to support those claims, Plaintiffs' Due Process and First Amendment claims, must be dismissed against Kenosha County and Sheriff Beth.

**II.     PLAINTIFFS' DUE PROCESS CLAIMS MUST BE DISMISSED.**

Plaintiffs' allegations are insufficient to state a due process claim against Sheriff Beth and Kenosha County. All of Plaintiffs' Due Process Claims (Count I, II, III) against Sheriff Beth and Kenosha County hinge on their conclusory allegations that Sheriff Beth lacked the authority or did not follow the correct procedure when allegedly issuing a curfew and/or declaring a state of emergency. The Amended Complaint alleges that Sheriff Beth declared both a "state of emergency" and a "curfew" but often uses the terms interchangeably:

1. Without any legal right, David Beth declared a state of emergency and curfew, making the simple act of being outside an arrestable offense. (Dkt. 16, ¶ 88).

2. David Beth ignored the procedural requirements as required under law before unilaterally and without legal justification or right, declared a state of emergency and curfew punishable by conviction. (Dkt. 16, ¶ 96).

3. David Beth created a danger to Plaintiffs by declaring a state of emergency. (Dkt. 16, ¶100).

3

4. Defendant was aware that by declaring a state of emergency and curfew without legal authority, he was subjecting Plaintiffs and the Plaintiff Class to prosecution for conduct which was not a crime. (Dkt. 16, ¶ 102).

In the Amended Complaint, Plaintiffs then make conclusory allegations, without any factual support, to allege a causal connection between these press releases and what actually happened to the Plaintiffs. In particular, Plaintiffs allege the following under their "due process claim":

91. As a result of David Beth's unlawful and extraconstitutional conduct, Plaintiffs and the Plaintiff Class were subject to police intimidation, harassment, and for many, arrest and criminal trial.

92. Plaintiffs and the Plaintiff Class were denied their fundamental rights and liberty interests.

95. David Beth deprived Plaintiffs and the Plaintiff Class of their protected interests of being free from unlawful arrest and freedom to express their opinions on matters of public importance.

103. It was obvious to Sheriff Beth that these protesters would be subject to arrest under his extra-legal order.

(Dkt. 16).

It is significant that Plaintiffs do not include facts or allegations as to what exactly is meant by "unlawful or unconstitutional conduct." It is vague as to whether Plaintiffs are alleging anything more than the process followed for making these press releases. A second deficiency is that Plaintiffs do not explain how the curfew "denied their fundamental rights and liberty interests." (Am. Comp. ¶ 92.) Nor do Plaintiffs explain in detail the differences between their three due process claims or include sufficient allegations to support them. Only one of the three claims is identified as a procedural due process claim. In fact, Plaintiffs' Amended Complaint is completely devoid of any factual allegations as to how the press releases by Sheriff Beth impacted at all on their due process rights. More importantly, the allegations are vague and deficient as to

whether a *Monell* or individual capacity claim is being alleged. Conclusory allegations, without more, is not enough to defeat a motion to dismiss. This is especially true as the only allegations against Sheriff Beth and Kenosha County is that the wrong process was followed when allegedly making the press releases and/or declaring a state of emergency or curfew. If plaintiffs believe they were wrongly arrested, they certainly have due process in that they can raise that very issue during their criminal proceedings.

To be clear, all of the press releases referenced in Plaintiffs' Amended Complaint state simply that there is a "state of Emergency Curfew" in effect, that the public needs to be off the streets for their safety, and that the curfew will be enforced. (Dkt. 16, ¶ 23, 24, 27, 30, Ex. 3-6) Plaintiffs' Amended Complaint conveniently ignores the City of Kenosha by City of Kenosha Common Council Resolution, declared an emergency due to riotous activity including burning building premises, burning of personal property, burning of government property, vandalism and otherwise damage producing activity, as well as personal injury.[1]

In addressing the lack of authority of Sheriff Beth to declare a curfew the Amended Complaint rests solely on labels and conclusions: "[n]o law gave him that right. David Beth is not the legislature—he does not get to decide what conduct should be a crime" (Dkt. 16, ¶ 89); "David Beth ignored the procedural requirements as required under law before unilaterally and without legal justification or right, declared a state of emergency and curfew punishable by conviction" (Dkt. 16, ¶ 96); "unlawful and unconstitutional conduct." (Dkt. 16, ¶ 91). It must be remembered that violation of state statutes or even county ordinances does not equate with a constitutional violation. While Wisconsin Statutes or County Ordinances may set forth specific requirements, a

---

[1] Resolution 134-20: Declaration of Emergency Regarding Civil Unrest Granting Additional Authority to the Mayor. Attested and approved on August 27, 2020. The signed version is online under a section titled "Adopted Ordinances & Resolutions" found here: https://www.kenosha.org//images/agenda_meeting/CC/2020_ORD_RES.pdf This Court can take judicial notice of the Resolution as it is not in dispute and is a matter of public record.

5

violation of state law or an Ordinance is not a violation of the Constitution, because state law does not define the parameters of constitutional rights. In other words, state law violations do not form the basis for imposing liability under 42 U.S.C. § 1983. See, e.g., *Windle v. City of Marion, Ind.*, 321 F.3d 658, 662-63 (7th Cir. 2003); *White v. Olig*, 56 F.3d 817, 820 (7th Cir. 1995)("It is therefore a truism, reiterated many times by this court, that mere allegations of state law infraction are insufficient to support a Section 1983 claim."); *Higgin v. Johns*on, 346 F.3d 788 (7th Cir. 2003)(a state law violation does not per se make a state actor liable under § 1983). As such, any allegations in the Amended Complaint that the County defendants violated Plaintiffs' Due Process rights based on not following the County ordinances do not rise to the level of a constitutional violation and are insufficient to defeat this motion.

Furthermore, the specific allegations fall far short of a substantive due process claim. A substantive due process claim is very limited. *Tun v. Whitticker*, 398 F.3d 899, 901 (7th Cir. 2005). Substantive due process is applicable only for "the most egregious official conduct [that] can be said to be 'arbitrary in the constitutional sense.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). For an abuse of power to reach the level of a substantial due process violation, the abuse must be that it "shocks the conscience." The Amended Complaint does not contain any allegations which would support an inference that the conduct by Sheriff Beth shocks the conscience. All Plaintiffs allege is that the County Ordinance was not followed, which does not even come close to "shock the conscience."

Even if one were to look at Ordinance 5.03 as referenced in the Amended Complaint, Plaintiffs' claims still fail. (Dkt. 16, ¶20). The Amended Complaint does not show, or even intimate how Kenosha County Ordinance 5.03 deprived Sheriff Beth the authority to declare a curfew. As such, the allegations are again conclusory and not entitled to be assumed true.

6

A Complaint further fails to meet the plausibility requirement and must be dismissed if allegations give rise to an "obvious alternative explanation" for the allegedly wrongful conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs' introductory argument in its response brief analyzes the case as follows:

> This case presents questions fundamental to our democracy – can a law enforcement officer usurp the law, declare limited martial law, and have protesters arrested for violation of laws he declares. Over the course of nine days in August and September, Sheriff David Beth decided that the Wisconsin Constitution, Wisconsin statutes, and local ordinances did not matter – that he knew best and that he would seize for himself the right to declare certain conduct criminal. For nine days, residents of Kenosha had no say through their elected officials. One man decided that the rule of law should take a back seat to what he deemed and emergency.

(Dkt. 25, p. 1). Plaintiffs' arguments show a complete lack of understanding of the powers and duties of a sheriff in Wisconsin. An obvious alternative explanation for the curfew is Sheriff Beth had both constitutional and statutory powers granting him authority to declare a curfew in Kenosha County.

### A. Constitutional Powers

The position of Sheriff is provided for in Article VI, Section 4 of the Wisconsin Constitution. The Wisconsin Constitution does not define the duties of a Sheriff, but case law has described examples and a method of analysis. Initially, the definition of whether duties were part of the Sheriff's constitutionally protected powers focused on a historical analysis of whether they were longstanding established duties of the sheriff at common law. *See State ex rel. Kennedy v. Brunst*, 26 Wis. 412, 414 (1870). But, in *State ex. rel. Milwaukee County v. Buech*, 171 Wis. 474, 177 N.W. 781 (1920), the Wisconsin Supreme Court shifted the focus of the analysis to those duties that characterized and distinguished the office of Sheriff, rather than whether they existed at common law. *See Buech*, 171 Wis. at 481–82, 177 N.W. 781. "If the duty is one of those

7

immemorial principal and important duties that characterized and distinguished the office of sheriff at common law, the sheriff 'chooses his own ways and means of performing it.'" *See Wisconsin Prof'l Police Ass'n v. Dane County*, 149 Wis.2d 699, 710, 439 N.W.2d 625 (Ct.App.1989) (WPPA II) (quoting WPPA I, 106 Wis.2d at 314, 316 N.W.2d 656).

> Within the field of his responsibility for the maintenance of law and order the sheriff today retains his ancient character and is accountable only to the sovereign, the voters of his county, though he may be removed by the governor for cause. No other county official supervises his work or can require a report or an accounting from him concerning his performance of his duty. He chooses his own ways and means of performing it. He divides his time according to his own judgment of what is necessary and desirable but is always subject to call and is eternally charged with maintaining the peace of the county and the apprehension of those who break it. In the performance of this duty he is detective and patrolman, as well as executive and administrator, and he is emphatically one of those who may serve though they only stand and wait. We recite these qualities and characteristics of the office not because they are novel but because they are so old that they are easily forgotten or unappreciated.

*Andreski v. Indus. Comm'n*, 261 Wis. 234, 240, 52 N.W.2d 135, 137–38 (1952).

### B. Statutory Powers

Wis. Stats. § 59.27(1) requires a Sheriff to perform all duties required by law. One of those required duties is under Wis. Stats. § 59.28(1), which states that Sheriffs must "preserve the peace in their respective counties and quiet and suppress all affrays, routs, riots, unlawful assemblies and insurrections…"

Even accepting Plaintiffs' claims that Sheriff Beth unilaterally declared a curfew, he had constitutional and statutory authority to determine the most effective way to preserve the peace and protect the public within Kenosha County. He had the authority to do so by declaring a curfew, on each day that a curfew was necessary, to keep the peace in Kenosha County for the safety of the public. Sheriff Beth's constitutional and statutory authority is not contingent on there being a formal declaration of a state of an emergency under Kenosha County Ordinance 5.03 or any other

8

statutory provision. It is clear that on the days Sheriff Beth imposed a curfew, Kenosha County was experiencing riotous conditions including looting, destruction of property, and shootings.

In their response brief, Plaintiffs claim "[c]ounsel has diligently searched and has found no instance in American history where a law enforcement officer declared conduct to be illegal solely on his own authority." (Dkt. 25, p. 9). While not binding authority on this Court, the Circuit Court of Connecticut addressed statutory language and public policy considerations nearly identical to what is at issue before this Court in *State v. Boles*, 5 Conn. Cir. Ct. 22 (1967).

The court in *Boles* held the curfew imposed by a mayor (acting under powers of a sheriff), excluding all persons from public streets during limited number of hours during four specified days as a manner of suppressing riot, was valid, and was not rendered invalid nor did it constitute denial of personal liberty without due process for failure to contain exceptions for reasonable and necessary activity. *Id.*

While it was the mayor in *Boles* who imposed the curfew it was the mayor's authority to exercise any powers conferred upon sheriffs in suppressing riots which the court relied upon. The relevant statute was nearly identical to the language of Wis. Stat. § 59.27(1) and provided:

> Each sheriff may execute in his county all lawful process directed to him, shall be conservator of the peace and may, when necessary, with force and strong hand, suppress all tumults, riots, unlawful assemblies and breaches of the peace and may raise the power of the county and command any person to assist him in the execution of his office.

*Id.* at 25.

The court found it clear that the statutory provisions, and in view of the circumstances then prevailing, the mayor acted within his authority by declaring a curfew and failure to have so acted might well have been considered a dereliction of duty. *Id.* at 25. It is equally clear in this case

9

that Sheriff Beth acted within his authority by declaring a curfew and Plaintiffs' Amended Complaint fails to allege factual averments showing the curfew was improperly declared.

## III. THE EMERGENCY CURFEW WAS NOT OVERLY BROAD.

While there is no controlling precedent on emergency curfews, other jurisdictions have determined that emergency curfews enacted with the purpose of preventing violence or the destruction of property are properly upheld as long as the curfew was imposed in good faith and was only imposed for the length of time necessary to prevent the emergency. For example, in *United States v. Chalk*, 441 F.2d 1277 (4th Cir.), *cert. denied*, 404 U.S. 943, 92 S.Ct. 294, 30 L.Ed.2d 258 (1971), the mayor of Asheville, North Carolina had declared a state of emergency and imposed a nighttime curfew after a race riot had occurred. Defendants, who were arrested for driving in a car after curfew, challenged the curfew as unconstitutionally overbroad. *Id*. at 1280.

The Fourth Circuit upheld the constitutionality of the curfew and reasoned "[t]he invocation of emergency powers necessarily restricts activities that would normally be constitutionally protected. Actions which citizens are normally free to engage in become subject to criminal penalty." *Id*. The court also noted that "the scope of [its] review in a case [involving an emergency curfew] must be limited to a determination of whether the mayor's actions were taken in good faith and whether there is some factual basis for his decision that the restrictions he imposed were necessary to maintain order." *Id*. at 1281. The court further stated that "it would be highly inappropriate for [the court], removed from the primary responsibility for maintaining order and with the benefit of time for reflection not available to the mayor, to substitute [its] judgment of necessity for his." *Id*. The court ultimately concluded that it was "enough . . . that there was a factual basis for the mayor's decision to proclaim the existence of a state of emergency and that he acted in good faith." *Id*. at 1282.

10

In another case, *Moorhead v. Farrely*, 723 F.Supp. 1109 (D.V.I. 1989), the Governor of the Virgin Islands imposed a nocturnal curfew after Hurricane Hugo laid waste to the islands of St. Croix and St. Thomas. Plaintiff, who was arrested for after-curfew travel, challenged the curfew's legality. Rejecting this claim, the court held that the curfew was constitutional because "the Governor's actions under the statute were made with sufficient factual basis and in good faith." *Id*. at 1114. The court further added that it would not "define precisely what specific conditions justify continued imposition of the curfew, because doing so [would destroy the broad discretion necessary for the executive to deal with an emergency situation." *Id*.

Further still, courts have noted that "it must be remembered that plaintiffs are free to exercise [their First Amendment rights] during other hours of the day, and that the curfew is an emergency measure which hopefully will not long remain in effect." *American Civil Liberties Union of West Tenn., Inc. v. Chandler*, 458 F.Supp. 456 (W.D. Tenn. 1978) (declining to grant injunctive relief arising out of nighttime curfew imposed in city of Memphis during August of 1978, noting that plaintiffs were not likely to prevail on their claims that the ordinance allowing mayor to impose curfew was unconstitutional on its face). According to the California Court of Appeals:

> A curfew primarily regulates conduct or, more specifically, movement. Its effect on speech is incidental. A curfew does not purport to regulate the content of speech, but rather imposes restrictions on the time, place and manner in which speech may be exercised. Discretionary determinations by a public official of which viewpoints will be heard and which will not be heard encourage censorship and discrimination, and are constitutionally suspect. *Cox v. Louisiana*, 379 U.S. 536, 557, 85 S.Ct. 453, 465, 13 L.Ed.2d 471. No such discrimination or censorship occurs when a blanket curfew is imposed. The curfew falls into the category of """a systemic, consistent and just order of treatment, with reference to the convenience of public use of the highways.""" *Id*. at 558, 85 S.Ct. at 466.

*In re Juan C*., 28 Cal.App.4th 1093, 1099 (1994).

11

In the present case, the Plaintiffs' Amended Complaint does not allege that Sheriff Beth imposed the curfew in bad faith, nor does it allege that he did not have a good reason for enacting the curfew. In fact, Plaintiffs admit that some of the demonstrators who gathered to protest against "the Kenosha Police" "engaged in destructive activity." (Dkt. 16, ¶ 14). Plaintiffs only alleged facts in support of their claim that the curfew was overly broad were that the curfew was imposed starting at 7 p.m. on some nights, (Dkt. 16, ¶ 140), and that it covered "50 square miles," (Dkt. 16, ¶ 34).

Further, the Plaintiffs conveniently left out Sheriff Beth's explanation of the scope of the curfew, as stated in his press release. Sheriff Beth explained that the purpose of the curfew was to protect the safety of Kenosha County residents, and even stated: "If you want to protest peacefully, by all means go out and do it. It's your right. But don't be a part of this destructive force that's burning our community." (*See* Dkt. 18 at 3 n.2)

The cases cited above pertaining to emergency curfews did not discuss whether the time and place restrictions imposed by the various curfews were overly broad or not sufficiently narrowly tailored, but rather focused *only* on whether the curfews were imposed in good faith and with sufficient factual basis. As Plaintiffs here do not allege either that the curfew was imposed in bad faith or that it was imposed without a sufficient factual basis, they have failed to sufficiently allege a plausible constitutional violation.

Thus, as Plaintiffs do not sufficiently allege that the curfew was constitutionally overbroad, Defendants Kenosha County and Sheriff Beth's Motion to Dismiss should be granted.

## IV. THE DOCTRINE OF QUALIFIED IMMUNITY SHIELDS SHERIFF BETH FROM SUIT FOR ANY INDIVIDUAL CAPACITY CLAIMS.

Governmental officials performing discretionary functions are shielded from liability insofar as their conduct does not violate any clearly established constitutional rights of which a

reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1992); *Hinnen v. Kelly*, 992 F.2d 140, 142 (7th Cir. 1993). An official is entitled to immunity if, when he acted, "he reasonably could have believed that his action did not violate a clearly established law." *Cham v. Wodnick*, 123 F.3d 1005, 1008 (7th Cir. 1997), cert denied, 522 U.S. 1117 (1998).

Sheriff Beth's conduct, as alleged in the Amended Complaint, did not violate clearly established constitutional rights of which a reasonable person would have been aware. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is not simply a defense to liability on the merits, but a right "not to stand trial or face the other burdens of litigation conditioned [upon] whether the conduct of which the plaintiff complains violated clearly established law." *Mitchell*, 472 U.S. at 526.

There is no well-established body of law clearly establishing constitutional rights arising from Sheriff Beth declaring a curfew to keep the peace and suppress riotous conditions. Taking Plaintiffs' Amended Complaint at face value, giving them the benefit of the doubt and attempting to understand their allegations as best as possible, the best Plaintiffs can allege against Sheriff Beth is that in the midst of riotous conditions Sheriff Beth announced a curfew for Kenosha County and informed the public the curfew would be enforced. For the reasons stated above, Plaintiffs cannot prove any underlying constitutional violation against Sheriff Beth. To the contrary, the authority cited establishes that Sheriff Beth acted within the confines of the law in announcing a curfew. Again, the Amended Complaint does not contain factual averments that Sheriff Beth had any role in enforcing the curfew, making arrests, or charging those arrested.

Nor can Plaintiffs show robust authority putting Sheriff Beth on notice he was engaging in unconstitutional conduct when declaring a curfew for his county during riotous activity. Plaintiffs concede as much, "[c]ounsel has diligently searched and can find no instance in American history

13

where a law enforcement officer declared conduct to be illegal solely on his own authority." (Dkt. 25, p. 9). Therefore, even if Plaintiffs could show a constitutional violation, which they cannot, Sheriff Beth is entitled to qualified immunity.

## CONCLUSION

For the aforementioned reasons, Kenosha County and Sheriff David Beth respectfully request that all claims alleged against Sheriff David Beth and Kenosha County be dismissed with prejudice for failure to state a claim.

Dated this 16th day of December, 2020.

        CRIVELLO CARLSON, S.C.
        Attorneys for Defendants, Kenosha County and David Beth

        BY:   */s/ Amy J. Doyle*
              SAMUEL C. HALL, JR.
              State Bar No. 1045476
              AMY J. DOYLE
              State Bar No. 1001333
              KILEY B. ZELLNER
              State Bar No. 1056806
              MICAELA E. HAGGENJOS
              State Bar No. 1118840
              **CRIVELLO CARLSON, S.C.**
              710 N. Plankinton Avenue, Suite 500
              Milwaukee, WI 53203
              Phone: (414) 271-7722
              Fax: (414) 271-4438
              E-mail: shall@crivellocarlson.com
                        adoyle@crivellocarlson.com
                        kzellner@crivellocarlson.com
                        mhaggenjos@crivellocarlson.com