DANICA GAGLIANO-DELTGEN and
VICTOR GARCIA,

        Plaintiffs,                      Case No. 20-CV-1353

v.

CITY OF KENOSHA and
JOHN DOES 1-100, in their Individual Capacities.

        Defendants.

## DEFENDANTS' BRIEF IN SUPPORT OF SUMMAY JUDGMENT

Defendants, John Does 1-100 and the City of Kenosha, by their attorneys, Alia, DuMez & McTernan, S.C, respectfully submit this Brief in Support of their Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(a). Plaintiffs have sued John Does 1-100 and the City of Kenosha for alleged violations under the First and Fourteenth Amendments. Despite adequate time for discovery, the Plaintiffs have failed to name John Does 1-100 and the Plaintiffs have failed to establish essential facts to support their claim of municipal liability against the City of Kenosha. Therefore, the Plaintiffs' claims must be dismissed.

## PROCEDURAL POSTURE

The Plaintiffs' Amended Complaint alleged the following claims against the City of Kenosha, John Does 1-100, and, then defendant, former Police Chief Daniel Miskinis: Count IV Unlawful seizure; Count V Equal Protection – Selective Enforcement; and Count VI First Amendment Retaliation. (Dkt. No. 16, Amend. Compl. p. 22). Defendants submitted a Motion to Dismiss the Plaintiffs' Amended Complaint on November 11, 2020. (Dkt. No. 17). After reviewing

the motions submitted, on September 30, 2021 the Court ordered Count IV (Unlawful Seizure) of Plaintiffs' Amended Complaint dismissed with leave to amend and permitted the Plaintiffs' First Amendment and Fourteenth Amendment claims against John Does 1-100 and the City of Kenosha to move forward. (Dkt. No. 35).

According to the Court's Order, the Plaintiffs could file a second amended complaint 21 days following the September 30, 2021 Order. (*Id.* at pg. 36). The Plaintiffs did not file a second amended complaint. On November 3, 2021, the Plaintiffs and Defendants submitted a joint 26(f) Report to the Court. (Dkt. No. 39). As a part of the 26(f) report, the Plaintiffs agreed to amend their Complaint to identify the individual "John Does" no later than March 31, 2022. (*Id.* at pg. 2). The Plaintiffs have not amended their Complaint to identify the John Does. Additionally, the Plaintiffs agreed to disclose all expert witnesses by April 30, 2022. (Dkt. No. 39). The Plaintiffs have not disclosed any expert witnesses.

On April 11, 2022, Defendants sent discovery request to plaintiffs' counsel, Attorney Milo Schwab, along with a request to depose his clients. (Alia Aff. ¶ 2). Follow up requests were additionally sent in May and June. *Id.* On June 24, 2022, defense counsel advised Attorney Schwab that we intended to file a motion for summary judgment and that we wanted to meet and confer regarding the agreed-upon statement of facts. *Id.* at ¶ 3. On June 27, 2022, Attorney Schwab informed us that he was pending final approval from his clients for dismissal of the lawsuit and based on those representations we deferred our discussion regarding the agreed-upon statement of facts. *Id.* at ¶ 4. On June 29, 2022, the Defendants sent to plaintiffs' counsel a proposed stipulation and proposed order to completely dismiss this matter. After multiple attempts to confirm the stipulation, on July 21, 2022, plaintiff's counsel informed us that Ms. Gagliano-Deltgen and Mr. Garcia would not dismiss this matter and he was going to withdraw as counsel. *Id.* at ¶ 5. On July

24, 2022, Defendants sent to Attorney Schwab a proposed set of agreed-upon facts; however, on July 25, 2022, Attorney Schwab informed us that he could not agree to any statement of facts as he was withdrawing as counsel. *Id.* at ¶ 10.

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(a) instructs courts to grant summary judgment if there is no genuine dispute as to any material fact. There can be no genuine issue of fact where there is a complete failure of proof. *See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).* While the initial burden is on the moving party to establish the non-existence of any genuine issue of material fact, once this burden is discharged, the burden shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Summary judgment is the "put up or shut up" moment in litigation, where "the non-moving party is required to marshal and present the court with evidence [he] contends will prove [his] case." *Goodman v. National Sec. Agency, Inc.*, 621 F. 3d 651, 654 (7th Cir. 2010.) The non-moving party "must do more than simply show that there was some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Therefore, summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co*., 885 F.3d 1087-88 (7th Cir. 2018).

The Plaintiffs filed their Amended Complaint on October 28, 2020. (Dkt. No. 16). Since then, they have not identified John Does 1-100. The Plaintiffs have failed to establish the existence

3

of essential facts that support their claims that the Kenosha Police Department (KPD) selectively enforced Kenosha County's Emergency curfew, and more specifically, that Ms. Gagliano-Deltgen and Mr. Garcia received curfew violation tickets based on their political viewpoints, instead of their conduct. Therefore, this Court should grant the Defendants' Motion for Summary Judgment and dismiss the Plaintiffs' entire suit with prejudice.

## ARGUMENT

### I. PLAINTIFFS' FOURTEENTH AMENDMENT CLAIM MUST BE DISMISSED BECAUSE THEY WERE GIVEN CITATIONS FOR THEIR CONDUCT AND NOT THEIR POLITICAL VIEWPOINTS.

Plaintiffs allege that John Does 1-100 and the City of Kenosha violated the Equal Protection Clause of the Fourteenth Amendment through the selective enforcement of Kenosha County's Emergency curfew. (Dkt. 16, Amend. Compl. Count V). Plaintiffs allege John Does 1-100 punished and inhibited anti-police protestors from exercising their First Amendment rights by issuing them Emergency curfew violations, while not issuing Emergency curfew violations to similarly situated pro-police protestors. (*Id.* at 118). Moreover, the Plaintiffs claim that "ONLY anti-police protestors were arrested by the Kenosha Police officers." (*Id.* at 46).

The Equal Protection Clause of the Fourteenth Amendment prohibits state action that discriminates on the basis of membership in a protected class or irrationally targets an individual for discriminatory treatment as a so-called "class of one." *See Enquist v. Oregon Dep't of Agric.* 553 U.S. 591 (2008). To successfully prove a class-of-one Equal Protection claim, the plaintiffs must establish that (1) a state actor has intentionally treated him differently than others similarly situated, and (2) there is no rational basis for the difference in treatment. *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010).

4

To satisfy the <u>first prong</u> of a class-of-one Equal Protection claim, plaintiffs must show that they were intentionally treated differently from individuals that were *similarly situated*. U*nited States v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008)(emphasis added). Similarly situated individuals must be "identical in all relevant aspects." *Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 680 (7th Cir. 2005). Put differently, to succeed in satisfying the first prong of the class-of-one Equal Protection test, plaintiffs must introduce evidence of similarly situated persons who were treated disparately from them. *See generally Srail v. Vill. Of Lisle, Ill.*, 588 F.3d 940, 945 (7th Cir. 2019). Given the above standard, "it is considerably harder" to prove a selective enforcement claim, *United States v. Hare*, 820 F.3d 93, 100 (4th Cir. 2016), because it requires identification of others who were not prosecuted. *Chavez v. Illinois State* Police, 251 F.3d 612, 640 (7th Cir. 2001). Here, the Plaintiffs' fail to satisfy the first prong because they have failed to identify similarity situated individuals.

In *RJB Properties, Inc v. Board of Education of the City of Chicago*, 468 F.3d 1005 (7th Cir. 2006), the Seventh Circuit found that a contractor could not succeed under a class-of-one Equal Protection claim because the plaintiff failed to identify a similarly situated company that the School Board treated more favorably. RJB Properties (RJB) alleged that the Chicago Board of Education (the Board) discriminated against them when the Board awarded the district's janitorial services to a different company. *Id.* at 1008. The Board stated that RJB was not chosen for the contract because RJB engaged in "non-responsible" business dealings uncovered during the Board's Office of the Inspector General's (OIG) investigation. *Id.* at 1007-1008. RJB responded by identifying that the other contractors that the Board considered (McMahon's, Nick's Dairy, Total Facility, and T&T Company) were also accused of "overcharging and not turning over documents" by the OIG. *Id.* at 1010. The court found that RJB, McMahon's, Nick's Dairy, Total

5

Facility, and T& T Company, were not similarly situated because despite the fact that all the companies were investigated by the OIG, RJB was the only company the OIG accused of "entering in contracts without possessing the equipment to perform on those contracts or making fraudulent statements on contractor disclosure documents." *Id.* Despite all five companies being investigated for wrongdoing, RJB did not offer evidence that the other companies were accused of "overcharging or refusing to turn over documents." *Id.*

The Seventh Circuit found that the OIG's allegations about RJB were different than those leveled against other companies; therefore, the Board had a rational basis to treat RJB differently. *Id.* The court recognized that "the Board rationally could have concluded that the OIG's unique (and more numerous) allegations against RJB made RJB more likely to engage in future misconduct and less likely to perform the janitorial contract to the Board's satisfaction." *Id.*

Here, the Plaintiffs have failed to identify similarly situated individuals. The Plaintiffs have not identified any individual who violated the Emergency curfew that was not arrested because of their "pro-police" viewpoints. Without any proof, the Plaintiffs claim that "John Doe Kenosha Police Officers" enforced the Emergency curfew "only against those who voiced opposition to police violence" and that the John Doe Kenosha Police Officers "as part of an informal policy of the Kenosha police, arrested over one hundred and fifty people in a selective, discriminatory, and unconstitutional manner based solely on the opinions they expressed."(Dkt. 16, Plaintiff's Response to Motion to Dismiss, pg. 8). However, despite over nineteen months of discovery, the Plaintiffs have provided no names, no dates, no times, and, most significantly, no circumstances of similarly situated individuals who were not given Emergency curfew violations because they had "pro-police views." Plaintiffs attempt to point to videos of Kyle Rittenhouse as an example of a pro-police counter protestor who was not given an Emergency curfew citation. (Dkt. 16, Amend.

6

Compl ¶ 43). However, the video in question is of August 25, not August 26. *Id.* Protestors and rioters in Kenosha on August 25, 2020 are not "identical in all relevant aspects" to Ms. Gagliano-Deltgen and Mr. Garcia on August 26, 2020 because the level of rioting, number of protestors on the street, and the number of counter-protestors on the street all changed night to night. Because the Plaintiffs' have failed to identify similarity situated individuals who were treated differently than they were, the Plaintiffs have failed to produce material facts to satisfy the first prong of their class-of-one Equal Protection claim.

To satisfy the second prong of the "class-of-one" theory, the plaintiffs must "present a set of facts that plausibly depict official action utterly unsupported by a rational basis." *See Frederickson v. Landeros*, 943 F.3d 1054, 1060 (7th Cir. 2019)(emphasis added). The municipality survives the rational basis scrutiny "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Srail v. Vill. of Lisle, Ill.,* 588 F.3d 940, 946 (7th Cir. 2009). The rational-basis requirement sets the legal bar low and simply requires "a rational relationship between the disparity of treatment and some legitimate governmental purpose." *D.B. ex rel. Kurtis B. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013). The burden is on the plaintiff to eliminate any reasonably conceivable state of facts that could provide a rational basis for the classification. *Id.*

On August 26, 2020, Ms. Gagliano-Deltgen and Mr. Garcia were walking toward the Kenosha County Courthouse at 9:12 p.m. equipped with "plastic shields, helmets, and saline solution." (Brennan Aff. ¶ 5). In the previous nights of demonstrations, Kenosha's downtown, Civic Park, and the Courthouse were centers of looting, arson, and property damage. (Miskinis Aff. ¶ 2). Near the Courthouse and Civic Park, is Kenosha County's Public Safety Building which holds the headquarters for the Kenosha Police Department, the headquarters for the Kenosha

Sheriff's Department, Kenosha County's 9-1-1 dispatch, and houses over one hundred individuals in the Kenosha Detention Center. *Id.* at ¶ 3. Because Ms. Gagliano-Deltgen and Mr. Garcia were walking toward the Courthouse equipped with gear that during the previous nights were used to confront officers and participate in violence, Detective Brennan rationally concluded they were violating the Emergency curfew to cause violence, looting, and property damage near the Courthouse and Kenosha Detention Center. (Brennan Aff. ¶ 7). Similar to the Board in *RJB Properties, Inc. v. Board of Education of the City of Chicago*, Detective Brennan rationally ticketed Ms. Gagliano-Deltgen and Mr. Garcia because they were violating the Emergency curfew to engage in misconduct and violence.

A defendant defeats the plaintiff's claim, and satisfies the test for rationally, when there is a conceivable rational basis for the difference in treatment. *See D.B. ex rel. Kurtis B.*, 725 F.3d at 686 (See. *eg., Heller v. Doe,* 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (explaining that a classification "must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification" (internal quotation marks omitted)); *Srail,* 588 F.3d at 946–47 (explaining that "any rational basis will suffice, even one that was not articulated at the time the disparate treatment occurred").

Detective Brennan had a rational basis for arresting Ms. Gagliano-Deltgen and Mr. Garcia because of their conduct and not their political viewpoints. Detective Brennan did not arrest the Plaintiffs because of their political viewpoints or any other improper motive. (Brennan Aff. ¶ 7). Because the Kenosha officers had a rational basis for arresting the Plaintiffs, they fail to satisfy the second prong of a successful class-of-one Equal Protection claim.

## II. PLAINTIFFS' FIRST AMENDMENT CLAIMS MUST BE DISMISSED BECAUSE THEY FAIL TO PROVIDE ANY OBJECTIVE PROOF OF RETALITORY TREATMENT.

The Plaintiffs claim that John Doe Kenosha Police officers punished anti-police protestors by giving them Emergency curfew tickets. (Dkt. 16 ¶¶ 120-122). There are no supporting facts to establish Kenosha Police officers gave tickets to individuals for violating the Emergency curfew because of their political viewpoint rather than their conduct.

To prove a successful First Amendment retaliation claim, the plaintiffs must establish (1) they engaged in activity protected by the First Amendment; (2) they suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the Defendants' decision to take retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). To prevail on such a claim, the plaintiffs must establish a "casual connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury." *Id.* (quoting *Hartman v. Moore*, 547 U.S. 250, 259, 126 S.Ct 1695, 164 L.Ed. 2d 441 (2006).

The Plaintiffs in this case "allege that their police-brutality stance was the motivating factor for their arrest," and that to support this allegation "they point to the sheer number of protestors who were arrested" compared to the counter-protestors that were not. (Dkt. 35, pg. 28).

Kenosha Police officers administered Emergency curfew tickets in a viewpoint neutral manner. (Miskinis Aff. ¶ 9). Curfew tickets were given to individuals because of they were in violation of Kenosha County's Emergency curfew. Individuals who were not involved in the protests or expressing a political viewpoint also received curfew violations. For example, On August 27, 2020, at 11:45 p.m., Kenosha Police officers responded to Kohl's department store located at 7200 Green Bay Road. (Nosalik Aff ¶ 7). As they approached the store, the officers

encountered a suspicious individual with a backpack who began to run. The individual was arrested for violating the Emergency curfew and bail jumping. *Id*. On August 27, 2020, at 7:19 p.m., Kenosha Police officers responded to Firehouse Towing located on the 5700 block of 49th Street for a disorderly conduct complaint. The individual resisted arrest was eventually subdued, and subsequently arrested for violating the Emergency curfew, bail jumping, and obstructing an officer. *Id.* On August 30, 2020, at 8:47 p.m., Kenosha Police officers were dispatched to intervene in a fight located 5315 14th Avenue. The officers broke up the fight and arrested the aggressor for battery, criminal damage to property, and for violating the Emergency curfew. *Id.* On September 1, 2022 at 12:05 a.m., Kenosha Police officers were dispatched to 6503 39th Avenue to investigate a suspicious individual looking into U-Haul trucks after the business was closed. *Id.* The individual was arrested for violating the Emergency curfew. *Id.*

The bottom line is that the Plaintiffs were given tickets because of their conduct and not their political viewpoints.(Brennan Aff. ¶ 7). The Plaintiffs have produced no evidence to the contrary. Detective Brennan had a rational basis to arrest the Plaintiffs that did not include their political beliefs. *Id.* Because the arresting officer had probable-cause to arrest the Plaintiffs, and no evidence has been produced establishing other motivating factors for their arrest, this Court should dismiss their claims of retaliatory arrest.

### III. PLAINTIFFS HAVE FAILED TO ESTABLISH THE ELEMENTS OF A SUCCESSUL MONELL CLAIM AGAINST THE CITY OF KENOSHA

The Plaintiffs allege that the KPD had a custom of enforcing the curfew only against anti-police protestors, and that the KPD failed to train and supervise their officers with respect to the Plaintiffs' First Amendment Rights. (Dkt. 16, Amend. Comp. ¶ 125-126).

*Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 64 (1978), instructs that a municipality may not be held liable under § 1983 based on a theory of respondeat

superior or vicarious liability. It is only when a municipality violates Constitutional Rights via an official policy or custom that it may be found liable under § 1983. *Id.*, *Wragg v. Village of Thornton*, 604 F. 3d 464, 467 (7th Cir. 2010.) In order to show the existence of "an official policy or custom, a plaintiff must show that his constitutional injury was caused 'by (1) the enforcement of an express policy of the [municipality], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policy making authority.'" *Id.* (quoting *Latuszkin v. City of Chicago*, 250 F. 3d 502, 503 (7th Cir. 2001.)) Inadequate police training may serve as a basis for § 1983 liability, "but only where the failure to train amounts to *deliberate indifference* to the rights of persons with whom the police come into contact." *Hollins v. City of Milwaukee*, 574 F. 3d 822, 827 (7th Cir. 2009.) (emphasis added).

"Plaintiffs allege that, over the span of a week, (1) not a single counter-protestor was arrested; (2) on August 25, after Kyle Rittenhouse killed two protestors, KPD knew that armed counter-protestors may pose danger to protestors; (3) KPD nevertheless "pushed" protestors towards the counter-protestors in order for counter-protestors to "deal" with them; and (4) KPD expressed friendliness towards the counter-protestors by thanking them for their help and giving them water." (Dkt. 35 at pg. 32.). Given these baseless allegations, the Plaintiffs rest their *Monell* claim on the fact that they believe that Chief Miskinis manifested a deliberate indifference to the anti-police protestors constitutional rights. *Id.*

Proof of deliberate indifference can take one of two forms: (1) "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need"; or (2) "a repeated pattern of constitutional violations" made the deficiencies in the systems "plainly obvious

11

Case 2:20-cv-01353-JPS   Filed 07/29/22   Page 11 of 13   Document 47

to the city policymakers." *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007*).*

In *Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 1354, 179 L. Ed. 2d 417 (2011), the Supreme Court held that a former state prisoner could not successfully substantiate a *Monell* claim against a district attorney's office for failing to train attorneys adequately about their duty to produce exculpatory evidence. Plaintiff pointed out that during the 10 years proceeding his armed robbery trial, Louisiana courts overturned four convictions of *Brady* violations by prosecutors in the district attorney's office. *Id* at 62. The Court found that "four reversals could not have put [the district attorney] on notice that the office's *Brady* training was inadequate." *Id*. Instead, the Court held that "[w]ithout notice that a course of training is deficient in a particular respect, the decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id*. Additionally, the Court found that recurring constitutional violations would not be an "obvious consequence" for prosecutors with "formal in-house training about how to obey the law." *Id.* at 66.

The KPD did not push protestors towards counter-protestors, the KPD did not "thank [counter-protestors] for help and give them water. (Miskinis Aff. ¶¶ 10-12). There is no evidence to the contrary. During the time of the Emergency curfew, more than 40 local, state, and federal law enforcement agencies responded to Kenosha. *Id*. These agencies were lead and the response coordinated by the Kenosha County Sheriff's Department, and not the KPD. *Id.* Notwithstanding the Plaintiffs incorrect statements, they still have failed to show any evidence that the KPD violated the rights of individuals during the Emergency curfew. By August 26, 2020, the Kenosha Police Department had issued one Emergency curfew violation. (Nosalik Aff. ¶ 5). Additionally, the Plaintiffs have failed to establish any facts that show the City of Kenosha or Chief Miskinis knew it was highly predictable that constitutional violations would occur. The City of Kenosha trains its

officers in the areas of Civil Rights, Constitutional law, arrest and detention procedures, use of force, and the Kenosha code of ordinances. (Miskinis Aff. ¶ 13). The City of Kenosha police officers are trained to enforce the law and ordinances in a viewpoint neutral manner and did so on August 26, 2020. (*Id*. at 11).

## **CONCLUSION**

The Plaintiffs' allegations may have been sufficient to pass muster for purposes of judgment on the pleadings, but at summary judgment they must point to actual evidence – evidence upon which a reasonable jury could rely to rule in their favor without speculating. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Because the Plaintiff's cannot meet that standard, their claims against defendants, John Doe 1-100 and the City of Kenosha should be dismissed with prejudice.

Dated this 29th day of July 2022.

/s/ Matthew J. Richer
Matthew J. Richer
State Bar No. 1097557
Attorneys for Defendants
Defendants City of Kenosha and
John Does 1-100
ALIA, DuMEZ & McTERNAN, S.C.
6633 Green Bay Road
Kenosha, WI 53142
Tel.:   (262) 654-8700
Fax.:   (262) 654-8600
E-mail:  mjr@addmlaw.com